# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JARITA MESA LIVESTOCK GRAZING
ASSOCIATION, ALAMOSA LIVESTOCK
GRAZING ASSOCIATION, SEBEDEO
CHACON, THOMAS GRIEGO, DONALD
GRIEGO, MICHAEL PENA, JUAN GIRON,
JOE GURULE JR., FERNANDO GURULE,
DIEGO JARAMILLO, LORENZO JARAMILLO,
GABRIEL ALDAZ, ARTURO RODARTE,
JEFFREY CHACON, GLORIA VALDEZ,
JERRY VASQUEZ, CARLOS ORTEGA,
LEON ORTEGA, HORACIO MARTINEZ,
RONALD MARTINEZ, STEVE CHAVEZ,
VANGIE CHAVEZ, ALFONSO CHACON,
DANIEL RAEL, JOHN VALDEZ,
and BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF RIO ARRIBA,

       Plaintiffs,

vs.                                                                     No. CIV 12-0069 JB/KBM

THE UNITED STATES FOREST SERVICE
and DIANA TRUJILLO, in her official
and individual capacities,

       Defendants.

## <u>MEMORANDUM OPINION</u>[1]

    **THIS MATTER** comes before the Court on: (i) the Federal Defendants' Motion for Page

Extension for Reply in Support of Their Motion to Reconsider, filed April 3, 2013 (Doc. 75)

---

[1]The Court previously issued an Order, filed March 31, 2014 (Doc. 115)("1st Order"), granting the Federal Defendants' Motion for Page Extension for Reply in Support of Their Motion to Reconsider, filed April 3, 2013 (Doc. 75), and an Order, filed March 31, 2014 (Doc. 116)("2nd Order"), granting in part and denying in part the Plaintiffs' Motion to Strike Portions of Defendants' Reply, or in the Alternative, for Leave to File Surreply in Opposition to Defendants' Motion for Reconsideration, filed April 26, 2013 (Doc. 82). In each Order, the Court wrote that it "may, however, at a later date issue a memorandum opinion more fully detailing its rationale for th[e] decision[s]." 1st Order at 2 n.1; 2nd Order at 2 n.1. This Memorandum Opinion is the promised opinion.

("Motion for Page Extension"); and (ii) the Plaintiffs' Motion to Strike Portions of Defendants'

Reply, or in the Alternative, for Leave to File Surreply in Opposition to Defendants' Motion for

Reconsideration, filed April 26, 2013 (Doc. 82)("Motion to Strike or for Surreply").  The Court

held a hearing on July 26, 2013.  The Court will grant the Motion for Page Extension, because

the issue is sufficiently complex to warrant a page extension.  The Court will grant the alternative

relief requested in the Motion to Strike or for Surreply but will deny the primary relief it

requests: the Court will not strike any portion of the Federal Defendants' Reply in Support of

Their February 7, 2013 "Motion for Reconsideration," Doc. 53, filed April 3, 2013

(Doc. 74)("Reply"); the Court will grant the Plaintiffs leave to file a surreply, however, because

the Reply exceeds the local rules' page-length limit, and because it appears that the Reply raises

new matter.

## PROCEDURAL BACKGROUND

Both of the motions now before the Court center around the Reply, a thirty-six page

document that serves as Defendant United States Forest Service's final written word in support

of the Federal Defendants' Motion for Reconsideration, filed February 7, 2013

(Doc. 53)("Motion to Reconsider"), which it filed two months earlier.  In the Motion for Page

Extension, the Forest Service argues -- after already having filed the Reply -- that the Reply

should be excused from the normal twelve-page limit that the local rules impose on replies.  See

D.N.M. LR-Civ. 7.5.  In the Motion to Strike or for Surreply, the Plaintiffs argue that the Reply

raises new matter, and the Court should thus either strike it or allow them to file a surreply.  To

contextualize these arguments, the Court will briefly outline: (i) this case generally; (ii) the

Defendants' Memorandum in Support of Motion to Dismiss, filed May 23, 2012

(Doc. 17)("MTD"), and the Court's Memorandum Opinion and Order, filed January 24, 2013

(Doc. 49)("MOO"), ruling on the MTD; and (iii) the Forest Service's Motion to Reconsider, which challenges a small portion of the MOO in which the Court stated that the Plaintiffs were entitled to open discovery on one of their claims.

### 1.    The Case Background.

This case is several ranchers' and ranching organizations' appeal of the Forest Service's decision to reduce cattle-grazing permits in Rio Arriba County, New Mexico, a rural county at the northern edge of the state.   See Complaint for Declaratory and Injunctive Relief (First Amendment to the United States Constitution, National Environmental Policy Act; National Forest Management Act, Sustain Yield Forest Management Act; Administrative Procedure Act), filed January 20, 2012 (Doc. 1)("Complaint").   Because the Forest Service is a federal administrative agency, the Administrative Procedure Act of 1946, Pub. L. No. 79-404, 60 Stat. 237 ("APA"), governs this appeal.   The Plaintiffs contend that the Forest Service's decision to cut permits contravened explicit recommendations from an internal Environmental Assessment ("EA"),[2] the New Mexico Department of Agriculture, the Range Improvement Task Force -- a

---

[2]Under the National Environmental Policy Act of 1969, Pub. L. No. 91-190, 83 Stat. 852, federal agencies are required to assess the environmental impacts of proposed actions that will significantly affect the quality of a human environment.   Agencies must prepare an environmental impact statement that sets forth proposed actions and their environmental impact. See 42 U.S.C. § 4332(2)(C).  When the agency cannot determine whether a proposed action will have an environmental impact, the agency must prepare an EA.  See 40 C.F.R. § 1501.4(b).  An EA:

    (a)    Means a concise public document for which a Federal agency is responsible that serves to:

        (1)    Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact.

        (2)    Aid an agency's compliance with the Act when no environmental impact statement is necessary.

group affiliated with New Mexico State University -- and the Rio Arriba County government, all of which proposed holding permit levels steady.  See Complaint ¶¶ 69-98, at 28-41.  In addition to arguing that the Forest Service's decision is substantively wrong, the Plaintiffs allege that the Forest Service official who made the decision to cut the permits, Defendant Diana Trujillo, did so for the purpose of retaliating against various ranchers and organizations, including the Plaintiffs, who had been publicly critical of her in the past -- including writing letters to her supervisors and to the governor of the State of New Mexico.  See Complaint ¶¶ 112-114, at 47-48.  The Plaintiffs use this allegation to support a claim for retaliation against protected speech, which the First Amendment to the Constitution of the United States of America prohibits.  See Complaint ¶¶ 111-115, at 47-48.

> ## 2.      **The MTD and the MOO.**

The Forest Service filed a motion to dismiss the First Amendment retaliation claim on May 23, 2012.  See MTD at 1.  The MOO -- which grants the MTD in part and denies it in part -- fully outlines the MTD's details, including the parties' briefing and a summary of the hearing on the MTD.  See MOO at 1-61.  The MOO's analysis is detailed, but, in essence, the Court concluded that the Plaintiffs could not proceed under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), but that they could proceed on two separate First Amendment retaliation claims: one under the APA; and the other a "standalone claim" that

---

(3)      Facilitate preparation of a statement when one is necessary.

(b)      Shall include brief discussions of the need for the proposal, of alternatives as required by section 102(2)(E), of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted.

40 C.F.R. § 1508.9.

arises directly under the First Amendment and is not subject to the APA's procedural provisions, which include virtually nonexistent discovery rights.  MOO at 111-13.

Before discussing the Motion to Reconsider in depth, the Court notes that it challenges only a single, narrow legal statement in the MOO.  The Motion to Reconsider does not argue that the Court erred in declining to dismiss the First Amendment retaliation claim; the Forest Service disagrees with the Court on this front, but the Motion to Reconsider does not seek the claim's dismissal.  See Motion to Reconsider at 7-8 & n.1.  Rather, the Motion to Reconsider argues that the Court erred in concluding that the Plaintiffs were entitled to robust, extra-APA discovery.  See Motion to Reconsider at 7-8 & n.1.  It argues that there is only a single First Amendment claim -- not two claims -- and that this lone claim is subject to the APA's procedural provisions, despite being constitutional in nature.  See Motion to Reconsider at 7-8 & n.1.  This distinction matters, according to the Forest Service, because the APA allows essentially no discovery, limiting the Plaintiffs' appeal to the administrative record -- documents that the Forest Service considered in making its original decision.  See Motion to Reconsider at 9-11.  The Forest Service agrees with most of the MOO; the sole portion of the MOO with which the Motion to Reconsider takes issue is reproduced below, with the two most relevant sentences bolded:

> 2.   The Plaintiffs May Seek Equitable Relief for the Violation of Their Constitutional Rights Outside of the APA.
>
> The Plaintiffs seek equitable relief from Trujillo in her official capacity. "An action against federal employees in their official capacities is in effect a suit against the United States for which a waiver of sovereign immunity must exist." Cortez v. EEOC, 585 F. Supp. 2d 1273, 1287 (D.N.M. 2007).  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. at 475.  "[A]n official capacity suit is only another way of pleading an action against an entity of which an officer is an agent." Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Fremont, 85 F.3d 489, 493 (1996)(internal quotation marks omitted).
>
> Through 5 [U.S.C.] § 702, Congress provided "a general waiver of the

government's sovereign immunity from injunctive relief."   United States v. Murdock Mach. and Eng'g Co. of Utah, 81 F.3d at 930 n.8.  "This waiver is not limited to suits under the Administrative Procedure Act."  Simmat v. U.S. Bureau of Prisons, 413 F.3d at 1233.

> Whether plaintiffs' claims arise under the APA or common law is also immaterial with respect to the sovereign immunity analysis. Under 5 U.S.C. § 702, the United States waives sovereign immunity as to actions "in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority."  As we held in Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225 (10th Cir. 2005), § 702's waiver of sovereign immunity "is not limited to suits under the Administrative Procedure Act."  Id. at 1233; see also Hanson v. Wyatt, 552 F.3d 1148, 1173 n.11 (10th Cir. 2008)(Gorsuch, J., concurring)("Section 702 is a waiver of sovereign immunity, but we have not treated Section 704 as a limit on that waiver." (citation omitted)).

Gilmore v. Weatherford, 694 F.3d at 1166 n.1.  The Plaintiffs may therefore bring their claims under the First Amendment, and not under the APA, against the Defendants without implicating sovereign immunity, because of the United States' general waiver, in 5 U.S.C. § 702, of sovereign immunity in suits seeking equitable relief.  Additionally, the Court has jurisdiction under 28 U.S.C. § 1331 of this claim.  See Simmat v. U.S. Bureau of Prisons, 413 F.3d at 1232, 1236 (finding that a federal court has jurisdiction under 28 U.S.C. § 1331 for claims "seeking vindication of their constitutional rights . . . and may obtain relief in the nature of either injunction or mandamus").   The United States' waiver of sovereign immunity in the APA extends to claims for "nonmonetary relief against federal officials and agencies," over which the Court has jurisdiction, such as those for equitable relief brought under 28 U.S.C. § 1331.  Simmat v. U.S. Bureau of Prisons, 413 F.3d at 1232, 1236.  Indeed, in the Plaintiffs' Second Notice of Additional Authority in Response to Defendants' Motion to Dismiss Count I, the Plaintiffs cite to persuasive authority from the United States Court of Appeals for the District of Columbia Circuit, which comes to the same conclusion as the Court has here.  See Trudeau v. Federal Trade Comm'n, 456 F.3d at 187 ("In sum, we hold that APA § 702's waiver of sovereign immunity permits not only Trudeau's APA cause of action, but his nonstatutory and First Amendment actions as well.").

The Court is fully aware of the tension that exists between allowing a standalone First Amendment claim for declaratory relief and the APA claims. Although the stand alone First Amendment claim allows the Plaintiffs robust discovery, while the similar claim under the APA and Olenhouse v. Commodity and Credit Corp., enjoys no or very little discovery.  The end result of both claims are likely to be similar if the Plaintiffs prevail: an injunction under the stand alone

claim and invariably under the APA claim.  The Defendants appear to ask the Court to fashion some doctrine -- like in the <u>Bivens</u> area -- that precludes the declaratory judgment action if there is another remedy.  There is, however, no such doctrine, and the Court is reluctant to create one here.  While the stand alone First Amendment claim undercuts <u>Olenhouse v. Commodity and Credit Corp.</u> in this case, this situation is unusual and relatively rare.  **The Plaintiffs could have brought only a First Amendment claim in a separate case and enjoyed robust discovery; there is no sound reason to prevent them from joining it with an APA claim, which largely raises statutory issues.  While the Plaintiffs could not get much, if any, discovery on their APA First Amendment claim, there is no sound reason to preclude them from getting discovery on their standalone claim simply because they also have an APA First Amendment claim.**

MOO at 111-113 (boldface omitted in opening heading to avoid confusion)(boldface in last two

sentences added).  The Court cited no authority for its conclusions in the final quoted paragraph,

but it appended the following footnote at the end of the final sentence:

> The Defendants appear to be prepared for this fact, as Department of Justice Attorney Andrew A. Smith appears to be representing the United States on the APA issues, and Assistant United States Attorney Ruth F. Keegan appears to be doing the heavy lifting regarding the First Amendment claims against Trujillo.

MOO at 113 n.8.

### 3.    The Briefing on the Motion to Reconsider.

The Forest Service filed the Motion to Reconsider on February 7, 2013.  <u>See</u> Motion to

Reconsider at 1.  The opening paragraph of its argument section sums up its request:

> The APA and Supreme Court common law predating the APA require that federal agency action be reviewed pursuant to the procedures set forth in the APA. The presence of Plaintiffs' constitutional claim does not alter this rule. The Tenth Circuit's opinion in <u>Simmat v. United States Bureau of Prisons</u>, 413 F.3d 1225 (10th Cir. 2005), on which this Court relied to recognize a "stand alone" First Amendment claim, is consistent with this rule.  Moreover, as Plaintiffs appear to acknowledge in their Complaint, the fact that Plaintiffs seek review of a final agency action makes Administrative Record review particularly appropriate. Finally, the policy reasons underlying Administrative Record review of agency decisions apply to constitutional claims as well as all other APA claims. However, should this Court decide to follow those few cases that have allowed discovery on constitutional claims, like those courts, this Court should prohibit discovery until it has had an opportunity to review the Administrative Record and Plaintiffs show cause for allowing discovery.

Motion to Reconsider at 7-8 & n.1.  The Forest Service notes:

> Under the APA, the presumption is that discovery is not allowed and review is limited to the Administrative Record.  Sims v. Nat'l Transp. Safety Board, 662 F.2d 668, 671 (10th Cir. 1981)("[T]he APA does not provide for discovery, and the Federal Rules of Civil Procedure do not apply to an agency.").  While the APA has limited exceptions to the rule, it is Plaintiffs' burden to show that the exceptions apply.  Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993)("[T]he designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity.")(citing Wilson v. Hodel, 758 F.2d 1369, 1374 (10th Cir. 1985)).  Whether exceptions apply here is not the subject of this Motion; nor does this Motion address the standard of review.  Rather, the sole issue presented here is whether the scope of this Court's review of Plaintiffs' First Amendment claim is governed by the procedures set forth in the APA and Olenhouse in the first instance, rather than the Federal Rules of Civil Procedure.

Motion to Reconsider at 7 n.1.

The Forest Service argues that the APA's provision that the reviewing "court *shall* review the whole record or those parts of it cited by a party" requires district courts to limit their review of agency actions to the administrative record.  Motion to Reconsider at 8 (emphasis in original)(quoting 5 U.S.C. § 706).  It contends that "[t]he APA does not make an exception for constitutional claims but expressly states that constitutional claims are also reviewed pursuant to APA procedures," and asserts that "Olenhouse, itself[,] included a constitutional due process claim[] that the United States Court of Appeals for the Tenth Circuit reviewed 'consistent with the judicial review provisions of the APA.'"  Motion to Reconsider at 8.

The Forest Service also contends that the APA largely codifies the common law of agency review, which existed before the APA's enactment, and that this common law indicates that district courts should limit their review of agency decisions to the administrative record.  See Motion to Reconsider at 9-10 (citing Tagg Bros. & Moorhead v. United States, 280 U.S. 420 (1930)).  It argues that this limitation applies even if the Plaintiffs have a claim directly under the

First Amendment.  See Motion to Reconsider at 10-11 (citing Franklin Sav. Ass'n v. Dir., Office of Thrift Supervision, 934 F.2d 1127, 1137 (10th Cir. 1991); Robbins v. U.S. Bureau of Land Mgmt., 438 F.3d 1074, 1085 (10th Cir. 2006)).   In particular, it quotes the dissent of the Honorable Antonin G. Scalia, Associate Justice of the Supreme Court of the United States, for the proposition that, "[w]hile a right to judicial review of agency action may be created by a separate statutory or constitutional provision, once created it becomes subject to the judicial review provisions of the APA unless *specifically* excluded."   Motion to Reconsider at 12 (emphasis in original)(quoting Webster v. Doe, 486 U.S. 592, 607 n.* (1988)(Scalia, J., dissenting)).

The Forest Service further argues that Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225 (10th Cir. 2005) -- the case upon which it says the Court relied to fashion or recognize a standalone First Amendment claim -- is consistent with the requirement of limiting judicial review to the administrative record.  See Motion to Reconsider at 13-14.  The Forest Service asserts that the plaintiffs in that case sought discovery, but that the Tenth Circuit nonetheless based its review on the administrative record alone and dismissed their case for failure to exhaust administrative remedies.  See Motion to Reconsider at 14 n.3 (citing Simmat v. U.S. Bureau of Prisons, 413 F.3d at 1231 n.9).  The Forest Service also block quotes a portion of Simmat v. U.S. Bureau of Prisons,  drawing particular attention to the final sentence of the block quote: "If Mr. Simmat had pursued his administrative remedies, he would have received either relief or an explanation, *and the courts would have something to review*."   Motion to Reconsider at 14 (emphasis in Motion to Reconsider but not source)(internal quotation marks omitted)(quoting 413 F.3d at 1238).   The Forest Service last asserts that limiting judicial review to the administrative record is particularly appropriate in this case, because the Court is reviewing a

final agency decision and because policies of fairness, orderly procedure, and competence support a limited review.  See Motion to Reconsider at 17-22.

In the alternative to a complete bar on evidence outside the administrative record, the Forest Service asks the Court to defer discovery until it has reviewed the administrative record to precisely tailor discovery to the issues presented.  See Motion to Reconsider at 22-23.  It asserts that even the courts that have allowed discovery outside of the administrative record have strictly conditioned the discovery.  See Motion to Reconsider at 22-23 (citing Puerto Rico Pub. Housing Admin. v. U.S. Dep't of Housing, 59 F. Supp. 2d 310, 327-28 (D.P.R. 1999)).  The Forest Service preemptively rebuts the Plaintiffs' expected contention that the administrative record is insufficient to evaluate whether the actions of the Forest Service were retaliatory, stating that, "[i]f that is the case, it is because Plaintiffs failed to exhaust their administrative remedies." Motion to Reconsider at 23.  The Forest Service notes that, in fact, a motion to dismiss for failure to exhaust administrative remedies is forthcoming, see Motion to Reconsider at 14 n.2, and it has since filed this motion, see Federal Defendants' Motion to Dismiss Count 1 for Failure to Exhaust Administrative Remedies, filed February 18, 2013 (Doc. 55)("MTD for Failure to Exhaust").

The Plaintiffs responded to the Motion to Reconsider within a month.  See Plaintiffs' Memorandum in Response to Defendants' Motion for Reconsideration, filed March 4, 2013 (Doc. 59)("Response").  They argue that the Court must undertake a de novo review of the Forest Service's actions, at least with regard to the standalone First Amendment claim.  See Response at 7.  They address Webster v. Doe, asserting that the Supreme Court

> held that the limitations of the APA did not preclude an independent review of the plaintiff's constitutional claims which would include discovery in the district court, noting that "[t]he District Court has the latitude to control any discovery process which may be instituted so as to balance respondent's need for access to

proof which would support a colorable constitutional claim against the extraordinary needs of the CIA for confidentiality . . . ."

Response at 9 (quoting 486 U.S. at 604).

The Plaintiffs quote extensively from Porter v. Califano, 592 F.2d 770 (5th Cir. 1979), a case in which, according to the Plaintiffs, the United States Court of Appeals for the Fifth Circuit allowed a plaintiff discovery on judicial review of an administrative dismissal of her First Amendment retaliatory termination claim.  See Response at 9-10.  The Plaintiffs also cite Pickering v. Board of Education, 391 U.S. 653 (1968), a case in which the Supreme Court stated that courts should conduct "an independent examination of the record," Response at 10 (internal quotation marks omitted)(quoting 391 U.S. at 579 n.2), rather than deferring to the agency's expertise, as, "in general, courts, not agencies, are expert on the First Amendment," Response at 11 (quoting Porter v. Califano, 592 F.2d at 780 n.15).

The Plaintiffs assert that district courts should conduct de novo review of constitutional claims.  See Response at 12 (citing McNary v. Haitian Refugee Ctr., 498 U.S. 479, 497 (1991)).  The Plaintiffs cite a number of cases in which they assert that district courts permitted supplementary discovery on top of an administrative record: Miccosukee Tribe of Indians of Florida v. United States, No. 08-23001-CIV, 2010 WL 337653 (S.D. Fla. Jan. 22, 2010); Grill v. Quinn, No. CIV S-10-0757 GEB GGH PS, 2012 WL 174873 (E.D. Cal. Jan. 20, 2012); and Puerto Rico Public Housing Administration v. U.S. Department of Housing & Urban Development, 59 F. Supp. 2d 310 (D.P.R. 1999).  See Response at 13-15.  The Plaintiffs also attempt to distinguish the cases that the Forest Service cites, arguing: that Olenhouse v. Commodity Credit Corp. "did not involve an independent constitutional claim and did not involve a discussion of what type of discovery is permissible on an independent First Amendment retaliation claim or on any independent constitutional claim," Response at 16; that

- 11 -

Franklin Savings Association v. Director, Office of Thrift Supervision did not involve an allegation that an agency had an unconstitutional motive, see Response at 16; that Robbins v. U.S. Bureau of Land Management "did not involve any issues about the scope of discovery on an independent constitutional claim," Response at 16; that, in National Broadcasting Co. v. United States, the Supreme Court "did not consider or discuss the scope of discovery that would be appropriate in a case alleging unconstitutional motive or intent by a federal official," Response at 17; and that, in Munsell v. U.S. Department of Agriculture, "[t]he court did not even reach the issue of whether the plaintiff had a constitutional claim because it found he had failed to exhaust administrative actions," Response at 18.

As a backstop to their primary argument that the Court should permit full discovery on all issues by virtue of the standalone claim being outside the APA, the Plaintiffs argue that their allegations of bad faith entitle them to discovery even under the APA.  See Response at 20-24. They argue that, "[a]lthough generally the scope of judicial review of agency action under the [APA] is limited to review of the administrative record . . . , there are several well recognized exceptions to this rule."  Response at 21.  They note that, "[i]n particular, extra-record discovery is appropriate where the plaintiff makes 'a strong showing of bad faith or improper behavior' by agency decision-makers."  Response at 21 (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971)).  They quote a case out of the United States District Court for the Western District of Wisconsin for the proposition that, "[i]f there are adequate grounds to suspect that an agency decision was tainted by improper political pressure, courts have a responsibility to bring out the truth of the matter."  Response at 22 (alteration in Response)(internal quotation marks omitted)(quoting Sokaogon Chippewa Cmty. v. Babbitt, 961 F. Supp. 1276 (W.D. Wis. 1996)).

The Forest Service filed its Reply on April 3, 2013 -- thirty days after the Plaintiffs filed their Response.[3]  As previously noted, the Reply contains thirty-six pages of argument.  The Reply first reiterates its argument that an implied cause of action under the First Amendment is still subject to the APA's procedural requirements, regardless whether it is standalone.  See Reply at 2-7.  It next argues that the comprehensive remedial scheme that Congress provides in the APA "leaves neither need nor room for an implied direct constitutional action for equitable relief." Reply at 7 (emphasis omitted)(capitalization altered for readability).  It first asserts that the Plaintiffs' suit is, in actuality, an appeal from a final agency action.  See Reply at 7 (citing 5 U.S.C. § 551(13)).  It asserts that the APA is the "comprehensive remedial scheme" applicable to final agency actions, Reply at 10, and, thus, "'[t]he APA is the proper avenue for reviewing an agency's action or decision,' including for alleged constitutional violations," Reply at 8 (alteration in original)(quoting Robbins v. Wilkie, 300 F.3d at 1212).  It contends that the Declaratory Judgment Act, 28 U.S.C. § 2201, likewise, does not circumvent the APA's procedural framework.  See Reply at 11-14.

The Reply next argues that § 706(2)(F) of the APA, which provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court," is inapplicable.  Reply at 17-20.  It first asserts that the Court has already held

---

[3]The local rules normally require that a "reply must be served and filed within fourteen (14) calendar days after service of the response," but that period "may be extended by agreement of all parties."  D.N.M. LR-Civ. 7.4(a).  The Plaintiffs agreed to three time extensions, first extending the deadline from March 21, 2013, to March 26, 2013, and then extending that deadline to April 2, 2013.  See Second Notice of Stipulated Extension for Federal Defendants' Reply in Support of Their Motion to Reconsider, filed March 22, 2013 (Doc. 71).  The Forest Service was unable to meet even the latest deadline and filed its Reply -- which was also three times the maximum length that the local rules impose on reply briefs -- on April 3, 2013.  The Forest Service asserts that the Plaintiffs agreed to a third extension giving them the additional day.  See Motion for Page Extension at 1 n.1.

- 13 -

that the Plaintiffs' discovery on the APA claims will be severely curtailed.  See Reply at 17 ("Plaintiffs could not get much, if any, discovery on their APA First Amendment claim." (quoting MOO at 113)).   It contends that § 706(2)(F) is applicable in two circumstances: (i) "when the action is adjudicatory in nature and the agency's fact-finding procedures [were] inadequate"; and (ii) "when issues not previously before the agency are raised in a proceeding to *enforce* a nonadjudicatory action."   Reply at 18 (emphasis in Reply but not source)(internal quotation marks omitted)(quoting Franklin Sav. Ass'n v. Dir., Office of Thrift Supervision, 934 F.2d 1127, 1142 n.7 (10th Cir. 1991)).

The rest of the Reply is devoted to arguing that the Plaintiffs have not triggered the bad-faith exception to the rule that judicial review is limited to the administrative record.  See Reply at 20-36.  It contends that the bad-faith exception arises from the Supreme Court's statement in Citizens to Preserve Overton Park, Inc. v. Volpe that a federal court "'may [but is not required to] require the administrative officials who participated in the decision to give testimony explaining their action' when there is 'a strong showing of bad faith or improper behavior.'"  Reply at 21 (alteration in Reply but not source)(quoting 401 U.S. at 420).  The Reply asserts that the Tenth Circuit limits this exception to "extremely limited circumstances," Reply at 21 (quoting Citizens for Alternatives to Radioactive Dumping v. U.S. Dep't of Energy, 485 F.3d 1091, 1096 (10th Cir. 2007))(internal quotation marks omitted), and that the Plaintiffs must submit evidence, not merely allegations, establishing the bad faith, see Reply at 22.  The Reply concludes by rebutting a number of the Complaint's factual allegations, although it makes clear that it does not believe it is obligated to do so, because the Plaintiffs have submitted no evidence supporting their allegations.

> Because Plaintiffs have plainly failed to meet their burden of making a
> strong showing of bad faith necessary to invoke the extremely limited exception

to the Administrative Record rule, there is nothing for Federal Defendants to rebut. Nonetheless, to the extent the Court considers Plaintiffs' allegations, Federal Defendants provide only the following examples demonstrating the false thread of allegations running through Plaintiffs' Complaint.

Reply at 23.

### 4.    The Briefing and Hearing on the Motions Now Before the Court.

The Forest Service filed its Motion for Page Extension contemporaneously with its

Reply.  The following two paragraphs from the Motion for Page Extension sum up its argument:

> Because of the present posture of this litigation, Federal Defendants have not had an opportunity to factually rebut the allegations in Plaintiffs' 146-paragraph Complaint that the Court recited at length and relied on in making the foregoing determinations in the January 24, 2013 Memorandum Opinion.  Under the standard of review for motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Federal Defendants' Motion to Dismiss, Doc. 17, was necessarily limited to accepting Plaintiffs' many allegations as true and arguing why those allegations were not sufficient to survive dismissal based on Rule 12(b)(6).

> Thus, while Plaintiffs were essentially able to incorporate by reference their Complaint and this Court's Memorandum Opinion into their bad faith argument, Federal Defendants have no such other filing to point to. Therefore, Federal Defendants' reply to the bad faith argument needs to address Plaintiffs' assertion of bad faith by listing many of Plaintiffs' allegations and rebutting them with actual evidence from the Administrative Record that was lodged with the Court on March 18, 2013.  Going through even a modest, representative number of these allegations (Plaintiffs' Complaint is 56 pages long) and briefly responding to them, of course, takes a significant amount of space, thereby justifying a substantial page extension.

Motion for Page Extension at 2-3 (footnote omitted)(citation omitted).

The Plaintiffs responded to the Motion for Page Extension nineteen days later.  See

Response in Opposition to Request for Page Limit Extension; Motion to Strike Portions of

Defendants' Reply, or in the Alternative, for Leave to File Surreply in Opposition to Defendants'

Motion for Reconsideration, filed April 22, 2013 (Doc. 78)("Opposition Brief").  The Opposition

Brief purports to be a joint response brief and motion.  It argues that the Reply was improper --

and that the Court should thus strike parts of it -- on two grounds: (i) it introduces new evidence from what the Motion to Reconsider and the Response introduced, namely, documents that the Forest Service added to the administrative record, <u>see</u> Opposition Brief at 5-14; and (ii) it introduces facts that go beyond the face of the Complaint and are thus improper at the motion-to-dismiss stage, <u>see</u> Opposition Brief at 14-16.  They point to a number of "corrections" that the Reply makes to the Complaint, such as the Reply's assertion that the meeting at which Professor David Correia spoke critically of the Forest Service happened a year earlier than the Complaint alleged that it had.  <u>See</u> Opposition Brief at 7-8.  They also point out that the Forest Service is using the closed nature of the administrative record to effectively cherry-pick evidence that benefits it, while preventing the Plaintiffs from gathering rebuttal evidence.  For example, the Plaintiffs assert that there is a "well-established practice" of District Rangers in other parts of the Carson and Santa Fe National Forests adopting EAs' proposals -- which Trujillo did not do in this case.  Opposition Brief at 9.  The Plaintiffs contend that they are unable to adduce evidence to demonstrate that such a pattern exists, but that the Forest Service, in its Reply, brought up an "isolated" counter-example "from more than a decade ago," in which a District Ranger declined to follow an EA's recommendation.  Opposition Brief at 9.

The Plaintiffs filed their Motion to Strike or for Surreply four days later.  It is a one-page document which mostly incorporates the arguments from the Opposition Brief, but the Plaintiffs attach a copy of their proposed surreply to it.  <u>See</u> Surreply in Opposition to Defendants' Motion for Reconsideration, filed April 26, 2013 (Doc. 82-1)("Surreply").  In the Surreply, they argue that the Court was correct to recognize a standalone First Amendment claim, because 5 U.S.C. § 702 provides a general waiver of sovereign immunity that is not limited to suits under the APA.  <u>See</u> Surreply at 5 (citing, <u>e.g.</u>, <u>Trudeau v. FTC</u>, 456 F.3d 178, 187 (D.C. Cir. 2006)).  They attack

the Forest Service's contention that the APA is a comprehensive remedial scheme, arguing that Schweiker v. Chillicky, 487 U.S. 412 (1988) -- a case the Plaintiffs say "held that a Bivens claim for money damages for an alleged due process violation were not appropriate because of the other remedies available" -- is inapposite.  Surreply at 7.  They argue, primarily, that Bivens' alternative remedy framework is inapplicable, because Bivens suits involve money damages, and not equitable relief, and, additionally, because there is no basis in the case law to suggest that it should be applied to the APA.  See Surreply at 7-8.  The Plaintiffs devote the remainder of their Surreply responding to the Forest Service's rebuttals of the Complaint's allegations.  See Surreply at 9-24.  As the Plaintiffs have since filed a motion specifically seeking discovery, and the Court considers that motion to be the more appropriate place to consider whether the Plaintiffs have met any required factual burden to receive discovery, the Court will not consider either the Forest Service's rebuttals in the Reply or the Plaintiffs' responses in the Surreply.  See Motion to Supplement and/or Complete the Administrative Record, and for Limited Discovery, filed November 25, 2013 (Doc. 106)("Motion for Discovery").  In short, the Court will use this Memorandum Opinion to describe the conditions under which the Plaintiffs are entitled to discovery and reserve the question whether those conditions are satisfied for the Motion for Discovery.

The Court held a joint hearing on the Motion for Page Extension, the Motion to Strike or for Surreply, and the Motion to Reconsider.  See Transcript of Hearing (taken July 26, 2013) ("Tr.").[4]  The Court resolved the first two motions -- the motions now before the Court -- with the following exchange:

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

[THE COURT:]  As far as the motion for page extension, . . . I d[id]n't read that until I had read through the briefing on the motion to reconsider, and when I got to the reply and began to read all of the merits discussion of the case, I probably without even looking at the motion for page extension could figure out what the dispute was.  So you know I've certainly read those portions of it, and then, of course, in reading the motion in opposition I understand what the opposition is, but I guess I'm inclined to go ahead and grant the page extension.

I did not go off on the bad faith exception, I didn't   go off . . . 7062F.   I didn't . . . try to fit any case law for allowing discovery in this case, so I probably am not going to at this stage of the case go off on those, so I'm inclined to just grant the page extension and keep it in.

Then we have, of course, the motion to strike portions of the defendants' reply.  I've written a number of opinions that I don't normally strike portions of briefs and things of that nature.  I only strike material in pleadings.  I believe that's what the rules are primarily limited to.  So I'm not very big on striking portions of briefing.  But I'd be inclined to grant the is surreply, so the plaintiffs can state what they want to say in opposition to the defendants' motion for reconsideration, those last 10, 15 pages that get into the merits of the case.

Like I said, I didn't go off on bad faith in the prior opinion, and I'm not inclined to go off on that in this portion of it, either.   So that's how I would propose to deal with that.

. . . .

MR. SMITH:  Yes, Your Honor. . . .   [W]e discussed this issue with oppos[ing] counsel this morning on the bad faith issue, . . . [and] we both agree that that's not for the Court to decide at this time.  So the portion of our . . . reply brief on the motion to reconsider and the portion of their surreply on that issue is not before the Court.

[THE COURT:]  Is that correct Mr. [Rosenstock ?]

[MR. ROSENSTOCK]:   Yes, Your Honor[.]   Mr. Smith and I and Ms. Keegan discussed this this morning[,] and[,] as we had said in our surreply[,] striking is really not an appropriate measure for the Court to take in [this] particular situation with briefs . . . since they[ relate to a] subject that a motion for [which] we all have planned . . . in the near future[.]  [W]e agreed that that makes sense [for] the Court . . . not . . . to address [it] . . . .

THE COURT:  Why don't I . . . grant[] both motions and grant your alternative relief . . . .  Does that work for you[?]

MR. SMITH:  Yes yes, Your Honor.

THE COURT:  Does that work for you, . . . [Plaintiffs?]

MR. ROSENSTOCK: [Y]es, Your Honor.

THE COURT:  So I'll do that . . . as far as the[ motion for an increase in the] p[age] limit go[es,] and [the] motion to strike [contains] the argument about whether there can . . . simultaneous[ly] . . . be an implied constitutional claim . . . when there's an APA constitution[al] claim. . . .  [S]o that was a little bit at issue in the motion for not so much the [motion for] page extension but in their op[position] and in the motion to strike.

THE COURT:  Yeah, that's the reason I think to not grant these things could create some problems, because I think there w[ere] some arguments scattered out a little bit, so it's not clean -- it's not cl[ean] just to cut it off at a particular page number.

MR. SMITH:  Right.

THE COURT:  I think I can separate it and say we're not going to get int[o] the bad faith that's correct[;] is that agreeable[?]

MR. SMITH:  That's fine.

THE COURT:  I'm not granting the motion to strike.  I'm granting the motion to file the surreply[.]

MR. ROSENSTOCK:  . . . [U]nderstood[,] Your Honor . . . .

THE COURT: All right.  If everybody's in agreement with that that's how we'll deal with those two motions.

Tr. at 3:15-6:21 (Court, Smith, Unidentified Speaker).

## LAW REGARDING MOTIONS TO STRIKE UNDER RULE 12(f)

Rule 12(f) of the Federal Rules of Civil Procedures provides:

**(f)**   **Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

**(1)**   on its own; or

**(2)**   on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days

after being served with the pleading.

Fed. R. Civ. P. 12(f).  Professors Charles Wright and Arthur Miller have recognized, however, that such motions are not favored and, generally, the courts should deny them:

> The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter. However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.  Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party.

5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure § 1382, at 433-36 (3d. ed. 2004)(footnotes omitted). Accord Burget v. Capital W. Sec., Inc., No. CIV 09-1015-M, 2009 WL 4807619, at *1 (W.D. Okla. Dec. 8, 2009)(Miles-LaGrange, C.J.)(citing Scherer v. U.S. Dep't of Educ., 78 F. App'x 687, 689 (10th Cir. 2003)(unpublished))("While motions to strike are generally disfavored, the decision to grant a motion to strike is within the discretion of the court.").

"Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." Estate of Gonzales v. AAA Life Ins. Co., No. CIV 11-0486 JB/WDS, 2012 WL 1684599, at *5 (D.N.M. May 8, 2012)(Browning, J.)(quoting Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. CIV 09-0455 CVE/FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010)).  "The Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed." Friends of Santa Fe Cnty. v. LAC Minerals, Inc., 892 F. Supp. 1333, 1343 (D.N.M. 1995)(Hansen, J.)(quoting Carter-Wallace, Inc. v. Riverton

Lab., Inc., 47 F.R.D. 366, 368 (S.D.N.Y. 1969))(internal quotation marks omitted).  Professors

Wright and Miller have also commented on what constitutes "immaterial" matter in the context

of a motion to strike.   "'Immaterial' matter is that which has no essential or important

relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary

particulars in connection with and descriptive of that which is material."   5C Wright & Miller,

supra, § 1382, at 458-60 (footnotes omitted).  Scandalous allegations are those that degrade a

party's moral character, contain repulsive language, or detract from the court's dignity.   See

Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc., 173 F.R.D. 275, 285 (D. Colo.

1997).

    "Only material included in a 'pleading' may be the subject of a motion to strike, and

courts have been unwilling to construe the term broadly.   Motions, briefs, . . . memoranda,

objections, or affidavits may not be attacked by the motion to strike."   Dubrovin v. Ball Corp.

Consol. Welfare Ben. Plan for Emps., No. CIV 08-0563 WYD/KMT, 2009 WL 5210498, at *1

(D. Colo. Dec. 23, 2009).   Accord Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d

1176, 1184 (D.N.M. 2009)(Browning, J.)(citing Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992

WL 43490, at *1, *4 (10th Cir. 1998)(unpublished table decision))("Generally . . . motions,

briefs, and memoranda may not be attacked by a motion to strike.").   "The Federal Rules of Civil

Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a

third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an

answer.'"   Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (quoting Fed. R.

Civ. P. 7(a)).

    "Striking a pleading or part of a pleading is a drastic remedy and because a motion to

strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are

disfavored." <u>Estate of Gonzales v. AAA Life Ins. Co.</u>, 2012 WL 1684599, at *5 (quoting <u>Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.</u>, No. CIV 09-0455 CVE/FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010)(Egan, J.))(internal quotation marks omitted)). "The exception to this principle is that a Court may 'choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court.'" <u>Ysais v. N.M. Judicial Standard Comm'n</u>, 616 F. Supp. 2d at 1184 (citing <u>In re Hopkins</u>, 162 F.3d 1173, 1998 WL 704710, at *3 n. 6 (10th Cir. 1998)(unpublished table decision)).

For example, in <u>Skyline Potato, Co., Inc. v. Hi-Land Potato, Co ., Inc.</u>, No. CIV 10-698, 2012 WL 6846386 (D.N.M. Dec. 31, 2012)(Browning, J.), the Court denied a motion to strike a letter filed with the Court, because the letter was not a pleading, and did not pertain to either party's legal defenses or arguments -- the letter expressed one party's position regarding whether the Court should rule on summary judgment motions pending at the close of a bench trial.  <u>See</u> 2012 WL 6846386, at *6.  Similarly, in <u>Great American Insurance Co. v. Crabtree</u>, No. CIV 11-1129 JB/KBM, 2012 WL 3656500 (D.N.M. Aug. 23, 2012)(Browning, J.), the Court denied a plaintiff's motion to strike exhibits attached to the defendant's motion to dismiss, because they were neither pleadings nor irrelevant.  <u>See</u> 2012 WL 3656500, at *18.  In <u>Applied Capital, Inc. v. Gibson</u>, the Court refused the plaintiff's request to strike a motion to dismiss, because rule 12(f) applies only to pleadings and not to a motion to dismiss.  <u>See</u> 2007 WL 5685131, at *18.  In <u>Estate of Anderson v. Denny's, Inc.</u>, No. CIV 12-0605 JB/GBW, 2013 WL 690809 (D.N.M. Feb. 7, 2013)(Browning, J.), the Court denied the plaintiff's request to strike a notice of completion of briefing for similar reasons.  <u>See</u> 2013 WL 690809, at *12.

## LAW REGARDING THE BRIEFING OF MOTIONS

The ordinary process for filing a motion in the District of New Mexico involves: (i) the movant contacting all other parties and ascertaining whether they consent to the proposed motion,[5] see D.N.M. LR-Civ. 7.1(a); (ii) the movant filing the motion and a memorandum or legal brief supporting the motion's requests,[6] see D.N.M. LR-Civ. 7.4(a); (iii) any opposing parties filing a response within fourteen days of the motion's filing,[7] see D.N.M. LR-Civ. 7.4(a); (iv) the movant filing a reply to any responses within fourteen days of the response's filing,[8] see D.N.M. LR-Civ. 7.4(a); (v) the movant filing a notice of completion of briefing, see D.N.M. LR-Civ. 7.4(e); and (vi) the Court holding a hearing, if the Court decides to do so,[9] see D.N.M. LR-

---

[5]The "[m]ovant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M. LR-Civ. 7.1(a). This requirement, known as the meet-and-confer requirement, does not apply to incarcerated parties who are proceeding pro se. See D.N.M. LR-Civ. 7.1(a). The Court fleshed out the obligations that the meet-and-confer requirement imposes on movants -- which are higher for some motions than for others -- in State of New Mexico ex rel. Balderas v. Valley Meat Co., LLC, No. CIV 14-1100 JB/KBM (D.N.M. May 20, 2015)(Browning, J.)(Doc. 16)(slip op.). See No. CIV 14-1100 JB/KBM, at *39-43 (Doc. 16).

[6]The movant may file his or her motion either with a separately filed memorandum of support, or as a single, comprehensive document; the Court prefers the latter approach. If the movant opts for the former approach, local rule 7.5's page limit applies to the combined length of the motion and the supporting memorandum brief. See D.N.M. LR-Civ. 7.5 ("The length of a motion or, if a separate brief is filed in support of a motion, the combined length of a motion and supporting brief, must not exceed twenty-seven (27) double-spaced pages.").

[7]"The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M. LR-Civ. 7.1(b).

[8]"The failure to file and serve a reply in support of a motion within the time prescribed for doing so constitutes consent that briefing on the motion is complete." D.N.M. LR-Civ. 7.1(b).

[9]The Court's general practice is to hold hearings on all opposed civil motions. See Anderson Living Trust v. WPX Energy Prod., LLC, No. CIV 12-0040 JB/LFG, 2015 WL 1321479, at 111 n.81 (D.N.M. Jan. 6, 2014)(Browning, J.). The local rules, however, provide that motions "will be decided on the briefs unless the Court sets oral argument." D.N.M. LR-Civ. 7.6(a).

Civ. 7.6.  Any of the fourteen-day time periods can be extended "by agreement of all parties" without a court order, provided that the extension does not "interfere with established case management deadlines."  D.N.M. LR-Civ. 7.4(a).  If a requested time extension is opposed or if the extension would interfere with case-management deadlines, then the requesting party may move the Court for the extension, but he or she must present "good cause" for the extension, and must file the motion within the original fourteen-day period for filing the brief.  Fed. R. Civ. P. 6(b)(1).  See D.N.M. LR-Civ. 7.4(a).

Surreplies -- briefs that a party opposing a motion files after the movant files his or her reply -- are not ordinarily part of the briefing process.  Local rule 7.4(b) provides: "The filing of a surreply requires leave of the Court."  D.N.M. LR-Civ. 7.4(b).  "A surreply is appropriate and should be allowed where new arguments are raised in a reply brief."  Walker v. THI of N.M. at Hobbs Ctr., No. CIV 09-0060 JB/KBM, 2011 WL 2728344, at *1 (D.N.M. July 6, 2011) (Browning, J.).  A party may request leave to file a surreply either before or after a hearing on the motion in question, but it is preferable that the surreply be filed before the hearing, so that the parties can come to the hearing fully informed on the issues and arguments.  See Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 229 F.R.D. 201, 204 (D.N.M. 2005)(Browning, J.).  Although full-blown surreplies are the exception rather than the norm, any party may file with the court any "controlling authority" that he or she discovers after the briefing has closed -- even if the Court has already held a hearing.  D.N.M. LR-Civ. 7.8(a).  If a party files supplemental authority, he or she may accompany the authority with up to 350 words explaining the authority's applicability to the case before the Court; opposing parties may then file a 350-word response to the supplemental authority within seven days.  See D.N.M. LR-Civ. 7.8(c).

Motions are limited to twenty-seven double-spaced pages, responses to twenty-four, and replies to twelve.[10]  See D.N.M. LR-Civ. 7.5.  The Court may, at its discretion, strike or ignore -- in whole or in part -- documents that do not comply with the local rules' page-length limitations.  See D.N.M. LR-Civ. 10.3(c).  The local rules do not explicitly provide for page extensions -- and thus parties may not effectuate page extensions merely by agreeing to them -- but the Court may grant them upon motion.[11]  The Court has broad discretion to grant or deny such motions,

---

[10]Footnotes and block quotations are exempt from the double-spacing requirement.  See D.N.M. LR-Civ. 10.1.  Briefs must be filed on single-sided, eight-and-one-half-inch-by-eleven-inch pages, and the left, right, and bottom margins must be one inch or larger, while the top margin must be one-and-one-half inches or larger.  See D.N.M. LR-Civ. 10.1.  All text must be twelve-point font or larger.  See D.N.M. LR-Civ. 10.1.

[11]Because the local rules do not provide for them, there is no standard or proper form for a motion for page extension.  There are three conceivable ways that a party could file one.  First, the party could file the motion along with his or her substantive brief, where the substantive brief already exceeds the relevant page limit and has everything in it that the movant wants to say.  This form takes the "forgiveness rather than permission" approach, which is risky, because, if the Court denies the request for a page extension, then it may strike or ignore all material in excess of the page limit.  This approach effectively plays "chicken" with the Court, relying on the fact that the Court will generally not want to strike a brief that a party has already filed.

Second, the party could file a motion for page extension before filing his or her substantive brief.  This form is a safer approach than the first form, because there is no risk of the Court striking or ignoring the brief.  It also lets the party know, in advance of filing the substantive brief, the page limit with which he or she must work.  On the other hand, the Court may be the least apt to grant this form of motion, as the Court -- not having seen any attempt by the party to tailor the substantive brief to the page limit -- may wonder why the party feels the need to be preemptively excused from the local rules' page limits.

Third, the party could file the motion along with his or her substantive brief, where the substantive brief complies with the relevant page limit.  This form is safer than the first form, because, if the Court denies the page extension, the party still has a complete, intact brief upon which to stand.  With this approach, the movant could either attach a copy of the proposed additional material with his or her motion for page extension -- thus maximizing the odds that the Court will allow the extension by capitalizing on the psychological pressure it puts on the Court that the additional material has already been written -- or put off writing the additional material until the Court grants the page extension -- thus avoiding the possibility of wasted work if the Court denies the page extension.

With this judge, it is probably not going to matter what form a party chooses.  The Court is inclined to let parties have their say, within reason.  The Court wants to have arguments in writing in advance of the hearing, and, if anyone did not get all of his or her points across in the briefing, then orally at the hearing.  The Court would always rather have too much information in

provided that it does not "place[] . . . unreasonable limitation[s] on the information available to the court" to render an informed decision.  Dodge v. Cotter Corp., 328 F.3d 1212, 1228-29 (10th Cir. 2003).  See United States v. Nacchio, 555 F.3d 1234, 1250 (10th Cir. 2009)("[I]t would be an abuse of discretion for the district court to unreasonably limit the evidence upon which it based its . . . decision . . . .").  The factors that the Court will consider in ruling on motions for page extensions include, in descending order of importance: (i) whether -- or how many of -- the opposing parties consent to the motion for page extension; (ii) whether, if the brief sought to be extended is responsive to an earlier brief, the earlier brief was subject to a page extension; (iii) the likelihood that the additional material will either be outcome dispositive or will save the Court more time in researching than is lost on the additional length -- this factor largely corresponds to the complexity of the brief's subject matter; (iv) the extent to which the requesting party's initial, un-extended brief -- if one has already been filed -- adequately conveyed its argument, and the extent to which its author exercised editorial efficiency; and (v) the frequency with which the requesting party has requested page extensions throughout the case -- a practice which is often hard on the Court.  The Court encourages parties to "narrowly tailor" page extensions, taking up no more additional length than is reasonably necessary to effectuate the extension's purported purpose.

Parties may also attach exhibits -- such as affidavits or pages from deposition transcripts -- to their briefs, but such exhibits are limited to a total of fifty pages.[12]  See D.N.M.

---

front of it than too little when making a decision.

[12]Parties may attach exhibits to motions, responses, or replies; the page limit refers to the number of pages that a party may attach to a single brief, i.e., a movant may attach fifty pages to his or her motion and another fifty pages to his or her reply.  See D.N.M. LR-Civ. 10.5.  Parties may also attach exhibits to their pleadings, but only if the exhibit "form[s] the basis for the action or [a] defense."  D.N.M. LR-Civ. 10.4.

LR-Civ. 10.5.  Unlike the page limits for the briefs themselves, however, the parties may enlarge the page limits for exhibits by mutual agreement, without the requirement of a court order.  See D.N.M. LR-Civ. 10.5.

<u>**ANALYSIS**</u>

The Court will grant the Motion for Page Extension, deny the Motion to Strike or for Surreply's request that the Court strike portions of the Reply, and grant the Motion to Strike or for Surreply's request for leave to file a surreply.

The Reply is well in excess of the page limit -- three times the twelve-page limit that the local rules impose -- and the Forest Service filed it that way, apparently with minimal warning, after the Plaintiffs granted the Forest Service three time extensions.  The Court is disinclined to punish the Plaintiffs' gracious behavior and reward the Forest Service's failure to comply with the local rules, by denying the Plaintiffs the opportunity to submit their Surreply.  The Court is equally disinclined, however, to impose the harsh sanction of either refusing to consider the Reply or striking everything past the twelve-page limit.

The Forest Service's unilateral decision to grant itself a page extension was non-ideal, if not improper, but the Court can adequately rectify it by allowing the Plaintiffs to file their Surreply.  The Forest Service's request for a page extension comes without the Plaintiffs' consent, and in reply to a Response that was not, itself, subject to a page extension, both of which cut against granting the Motion for Page Extension.  On the other hand, the subject-matter of this case has some complexity, and the Forest Service -- rather than writing a proper-length brief and asking for additional space -- filed a single, voluminous brief which, if the Court were to cut off one-third the way through it, would not adequately convey its arguments.  These factors cut in favor of granting the Motion for Page Extension.  Last, the parties do not appear to

have made it a routine practice to exceed the page limits in this case.  Scanning the CM/ECF docket sheet, the Court does not see any requests for page extensions before this one -- although the filings in this case have, at times, felt voluminous.  That the Motion for Page Extension appears to be the first of its kind in this case cuts in favor of granting it.

The Court will, thus, grant the Motion for Page Extension, and fully consider -- <u>i.e.,</u> it will not strike any of -- the Reply.  It will, however, allow the Plaintiffs to submit their Surreply, and it will fully consider that document, as well.

**IT IS ORDERED** that: (i) the Federal Defendants' Motion for Page Extension for Reply in Support of Their Motion to Reconsider, filed April 3, 2013 (Doc. 75), is granted; (ii) the Plaintiffs' Motion to Strike Portions of the Defendants' Reply, or in the Alternative, for Leave to File Surreply in Opposition to Defendants' Motion for Reconsideration, filed April 26, 2013 (Doc. 82), is granted in part and denied in part, and (iii) the Court will consider all of both the Federal Defendants' Reply in Support of Their February 7, 2013 "Motion for Reconsideration," Doc. 53, filed April 3, 2013 (Doc. 74), and the Surreply in Opposition to Defendants' Motion for Reconsideration, filed April 26, 2013 (Doc. 82-1).

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Simeon Herskovits
Iris A. Thornton
Michelle T. Miano
Advocates for Community and Environment
El Prado, New Mexico

--and--

Richard Rosenstock
Santa Fe, New Mexico

     *Attorneys for the Plaintiffs*

Damon P. Martinez
  United States Attorney
Ruth Fuess Keegan
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

--and--

John C. Cruden
  Assistant Attorney General
Andrew A. Smith
  Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Albuquerque, New Mexico

     *Attorneys for the Defendants*