## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JARITA MESA LIVESTOCK GRAZING
ASSOCIATION, ALAMOSA LIVESTOCK
GRAZING ASSOCIATION, SEBEDEO
CHACON, THOMAS GRIEGO, DONALD
GRIEGO, MICHAEL PENA, JUAN GIRON,
JOE GURULE JR., FERNANDO GURULE,
DIEGO JARAMILLO, LORENZO JARAMILLO,
GABRIEL ALDAZ, ARTURO RODARTE,
JEFFREY CHACON, GLORIA VALDEZ,
JERRY VASQUEZ, CARLOS ORTEGA,
LEON ORTEGA, HORACIO MARTINEZ,
RONALD MARTINEZ, STEVE CHAVEZ,
VANGIE CHAVEZ, ALFONSO CHACON,
DANIEL RAEL, JOHN VALDEZ,
and BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF RIO ARRIBA,

        Plaintiffs,

vs.                                                              No. CIV 12-0069 JB/KBM

THE UNITED STATES FOREST SERVICE
and DIANA TRUJILLO, in her official
and individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiffs['] Motion to Amend or

Correct the Amended Memorandum Opinion of November 18, 2014, Granting Defendants'

Motion to Dismiss Plaintiffs['] First Amendment Claim for Failure to Exhaust Remedies, filed

November 26, 2014 (Doc. 136)("Plaintiffs' Motion to Reconsider"); and (ii) the Federal

Defendants' Motion to Amend the Court's February 9, 2015 Memorandum Opinion and Order,

ECF No. 143, filed February 21, 2015 (Doc. 147)("Defendants' Motion to Reconsider").  The

Court held a hearing on May 21, 2015.  The primary issues are: (i) whether the Court should

reconsider its Amended Memorandum Opinion, filed November 18, 2014 (Doc. 135)("AMO"), and acknowledge that Plaintiff Steve Chavez filed an administrative appeal with Defendant United States Forest Service before filing this case; and (ii) whether the Court should reconsider its Memorandum Opinion and Order, filed February 9, 2015 (Doc. 143)("MOO") -- in which the Court gave alternative directions, because it was not sure what argument the Defendants were making -- to remove the portion of the MOO that responded to an interpretation of the Defendants' briefing that turned out to not reflect their intended argument.   As to the first issue, Chavez filed an administrative appeal, and the AMO's statement that he did not was incorrect. The Court read, and the MOO noted, that Chavez had written a letter to Defendant Diana Trujillo expressing dissatisfaction with the initial administrative decision.   The Court misinterpreted that letter as being a precursor to an administrative appeal, rather than an appeal in itself.   The Court will thus grant the Plaintiffs' Motion to Reconsider and will rectify the error in the AMO.   As to the second issue, the Defendants' briefing was ambiguous, and the Court could have reasonably interpreted it to mean either of two things.   To cover its bases and save the parties from having to file additional materials -- and taking up additional time in a case that is already slow-moving -- the Court acknowledged the ambiguity and separately resolved the issues that each of the two interpretations would raise.   The Defendants now ask the Court to strike references to the apparently unintended interpretation of their briefing.   The Court sees no reason to do so, however, as the Defendants have not pointed to any statement of fact or law in the MOO that is incorrect -- they just seek to strike what has turned out to be surplusage.   The Court will thus grant the Defendants' Motion to Reconsider in part and deny it in part; it will reconsider the portions of the MOO that the Defendants challenge, but, as there is nothing wrong with them, it will not alter them.

## PROCEDURAL BACKGROUND

This case is action for judicial review -- i.e., an appeal under the Administrative Procedure Act, Pub. L. No. 79-404, 60 Stat. 237 ("APA") -- of the Forest Service's final decision to reduce livestock-grazing permits in the El Rito Ranger District of the Carson National Forest. See Complaint for Declaratory and Injunctive Relief (First Amendment to the United States Constitution, National Environmental Policy Act; National Forest Management Act, Sustain Yield Forest Management Act; Administrative Procedure Act), filed January 20, 2012 (Doc. 1)("Complaint").  The Court has summarized the Plaintiffs' factual allegations and legal claims on numerous occasions throughout this case -- including in the AMO and the MOO -- and it will not do so again here.

1.        **The AMO and the Plaintiffs' Motion to Reconsider.**

One of the Plaintiffs' claims is that Trujillo -- the Forest Service District Ranger responsible for allocating grazing permits in the Plaintiffs' area -- cut the Plaintiffs' permits in part to retaliate against them for complaints that they lawfully lodged with Trujillo's superiors and high-ranking state officials -- an allegation which, if true, constitutes a violation of the First Amendment to the Constitution of the United States of America.  See Complaint ¶ 57, at 23; id. ¶¶ 112-13, at 47-48.  Trujillo moved to dismiss the First Amendment claim on the basis that the Plaintiffs had failed to exhaust their administrative remedies, see Federal Defendants' Motion to Dismiss Count 1 for Failure to Exhaust Administrative Remedies, filed February 18, 2013 (Doc. 55)("Exhaustion MTD"), and the Court granted the motion, ruling that "judicial review of Forest Service proceedings requires issue exhaustion, not merely remedy exhaustion, and constitutional claims -- even First Amendment claims -- are not exempt from this requirement," AMO at 74.

The Court ruled that the two grazing association Plaintiffs -- Plaintiffs Jarita Mesa Livestock Grazing Association and Alamosa Livestock Grazing Association -- had filed administrative appeals with the Forest Service, but that, because the appeals did not mention the First Amendment, retaliation, protected speech, or anything sufficient to put the Forest Service on notice of a First Amendment claim, the Court dismissed those two Plaintiffs' First Amendment claims for lack of administrative (issue) exhaustion.  See AMO at 101-05.  As to the individual Plaintiffs -- i.e., every Plaintiff other than the two grazing associations -- the Court stated that they had failed to file any administrative appeals at all, and that their First Amendment claims would therefore be barred even under the more lenient doctrine of remedy exhaustion.  See AMO at 101 ("The Court will first dispense with the low-hanging fruit that is the Individual Plaintiffs.  They failed to file any administrative appeals whatsoever and thus would be subject to dismissal even if the only requirement were remedy exhaustion.").

The Court noted that one of the individual Plaintiffs -- Chavez -- had written to Trujillo following her initial adverse decision, but the Court characterized that letter as a letter in preparation for an appeal, rather than an appeal in and of itself:

> The Forest Service attaches a preliminary letter from S. Chavez to Trujillo indicating his desire to appeal, see Letter from Steve Chavez to Diana Trujillo, filed February 18, 2013 (Doc. 55-1)[("Chavez' Letter")], as well as the actual notice of appeal that the Grazing Associations' lawyer filed, see Notice of Appeal for Jarita Mesa Livestock Grazing Association, Alamosa Livestock Grazing Association and Board of County Commissioners of the County of Rio Arriba of the El Rito District EA and FONSI, filed February 18, 2013 (Doc. 55-2)("Notice of Appeal").

AMO at 31.

The Plaintiffs' Motion to Reconsider is short and to the point.  It contends that Chavez' letter was itself an appeal -- not a mere "preliminary letter," as the Court had characterized it.  AMO at 31.  See Plaintiffs' Motion to Reconsider ¶¶ 1-2, at 2.  The Plaintiffs concede that

Chavez' Letter does not raise a First Amendment issue -- and thus Chavez' First Amendment claim will still not survive, for the same reason that the grazing associations' claims did not survive -- but they nonetheless ask the Court to correct its statement, "because sometimes a statement made in a court opinion can take on a life of its own unless brought to the court's attention for correction."  Plaintiffs' Motion to Reconsider ¶ 3, at 2.

The Plaintiffs state that the "[c]ounsel for Defendants has been contacted and does not concur in this motion," but do not elaborate further.  Plaintiffs' Motion to Reconsider ¶ 4, at 2. The Defendants replied to the Plaintiffs' Motion to Reconsider, stating that they

> take no position on Plaintiffs' Motion to Amend, [but that they] question the necessity for the Motion to Amend. Plaintiffs effectively concede that Mr. Chavez's administrative appeal was not material to the Court's Amended Memorandum Appeal because Mr. Chavez "did not raise a First Amendment issue, [sic] in his administrative appeal."  Mr. Chavez's administrative appeal was therefore irrelevant to the matter before the Court, which was whether Plaintiffs administratively exhausted a First Amendment claim.

Federal Defendants' Response to Plaintiffs' November 26, 2014 Motion to Amend the Court's Amended Memorandum Opinion, filed December 15, 2014 (Doc. 137).

### 2.   The MOO and the Defendants' Motion to Reconsider.

The parties to this case have, from the outset, been engaged in an ongoing battle over what documents the Plaintiffs can use in presenting their case to the Court.  Under the APA, the so-called administrative-record rule limits parties to the documents that the agency considered in its internal deliberations.  See MOO at 62.  The rule is a close analogue to the closed-record rule that the Courts of Appeals use with respect to processing appeals from the district courts.  See MOO at 62 & n.12.

An exception to the administrative-record rule exists when the plaintiff can show that the agency acted in bad faith, and this bad faith caused the agency to omit from the administrative

- 5 -

record materials that should be there -- either by never considering them, or by considering them but not including them in the record.  See AMO at 62 & n.11 (citing Citizens for Alternatives to Radioactive Dumping v. U.S. Dep't of Energy, 485 F.3d 1091, 1096 (10th Cir. 2007)); id. at 64 & n.14.  The Plaintiffs attempted to use the bad-faith exception in this case, see Motion to Supplement and/or Complete the Administrative Record, and for Limited Discovery, filed November 25, 2013 (Doc. 106)("Motion to Supplement the AR"), but the Court ruled in the MOO that they had failed to make the requisite showing, see MOO at 62-70, and it denied the Motion to Supplement the AR.

In the Defendants' opposition briefing to the Motion to Supplement the AR, see Federal Defendants' Response in Opposition to Plaintiffs' February 27, 2014 Supplemented Motion to Supplement or Complete the Administrative Record [ECF Nos. 106 and 112], filed July 16, 2014 (Doc. 118)("Motion to Supplement the AR Response"), they argued that the Plaintiffs had failed to establish bad faith, but they also made numerous ambiguous statements that could be read as saying that the Forest Service had improperly pared down the administrative record that it produced for the Court.  At the judicial-review stage of an APA case, the administrative record must include all items that the agency considered at all stages of administrative review -- during the initial decisionmaking and at all levels of appeal.  See MOO at 70-75.  If the agency considered a document at one stage, but not at every stage from the initial decisionmaking to the final administrative appeal that ripens the case for judicial review, the agency must nonetheless include the document in the administrative record:

> If an agency wants to get the benefit of having judicial review limited to the administrative record, it is responsible for maintaining a record -- from the ground up -- in the first place.  Cf. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. at 420 ("[H]ere there are no such formal findings and it may be that the only way there can be effective judicial review is by examining the decisionmakers themselves."); Nat'l Audubon Soc'y v. Hoffman, 132 F.3d at 14 (holding that the

reviewing court may supplement the administrative record "where the absence of formal administrative findings makes such investigation necessary in order to determine reasons for the agency's choice").  The Tenth Circuit said so, in terms that could not be clearer:

> The complete administrative record consists of all documents and materials directly or indirectly considered by the agency.
>
> The "whole record" in this case consists of all documents and materials considered by the Forest Supervisor (the Deciding Officer) in making his initial decision, as well as all documents and materials contained in the agency appeal record as developed throughout the agency review process by the Regional Forester and the Chief (the Reviewing Officers).   Therefore, as long as Defendants submitted all documents and information considered and developed at all three stages of the Forest Service's decision and review process, nothing more and nothing less, the Administrative Record submitted to the district court was correct.

> Bar MK Ranches v. Yuetter, 994 F.2d at 739.  There is no way to misinterpret this dictate; the case is even Forest Service-specific, thus cutting off any possible argument that the Forest Service's agency-specific regulations permit a less-inclusive administrative record.

MOO at 71-72.

The Motion to Supplement the AR Response, however, contained a number of lines that appeared to suggest that if a document was not considered at every stage of administrative review -- rather than merely at any stage -- then the Forest Service need not include the document in the administrative record.   For example, the Defendants made the following statements: (i) that the "Plaintiffs are barred from pursuing any claim based on . . . materials they failed to present in their administrative appeal," Motion to Supplement the AR Response at 6 (emphasis omitted)(capitalization altered for readability));  (ii) that the "Plaintiffs' failure to present the evidence in their Administrative Appeal that they now seek to have the Court rely on thwarts all of these objectives," Motion to Supplement the AR Response at 9-10; (iii) that "[t]he Forest Service's Administrative Appeal regulations expressly required Plaintiffs to produce such

evidence with their Administrative Appeal," Motion to Supplement the AR Response at 10 (citing 36 C.F.R. § 215.14(a), (b)(8)); (iv) that the "Plaintiffs' Administrative Appeal failed to raise claims, issues, arguments, and <u>evidence</u> on which Plaintiffs now seek to base their appeal before this Court," Motion to Supplement the AR Response at 11 (emphasis added)); (v) that "neither of these affidavits is properly before the Court because the Plaintiffs failed to produce them with their Administrative Appeal," Motion to Supplement the AR Response at 24; and (vi) that the "Plaintiffs [are] barred from submitting these affidavits for the first time in Court instead of with Plaintiffs' Administrative Appeal," Motion to Supplement the AR Response at 32. <u>See</u> MOO at 70.

The Court was not sure whether these statements were simply an inartful way of saying "the Plaintiffs cannot bring up entirely new materials now, at the judicial-review stage," or if they were intended to convey the idea that -- much the same way that the Plaintiffs were required to preserve legal issues at each successive stage of review -- only evidence that was both considered during the initial decisionmaking <u>and</u> resubmitted at the administrative-review stage should be included in the administrative record.  To cover its bases, the Court responded to both possible interpretations:

> The Motion raises three questions: (i) whether the Plaintiffs have shown that the Forest Service acted in bad faith, such that they can add to the administrative record and possibly take discovery; (ii) whether the Forest Service has compiled an incomplete administrative record for the Court, which would require the Forest Service to add the omitted materials even absent a showing of bad faith; and (iii) whether and in what circumstances the Court can look to materials outside of the administrative record, even when the record is complete and the agency has not been shown to have acted in bad faith.  On the first question, the Court concludes that the Plaintiffs have failed to make the necessary showing of bad faith and will thus deny their request to supplement the administrative record with new materials.  On the second question, the Court concludes that a proper and complete administrative record includes all materials that the Forest Service considered at any time and not merely the materials it considered upon administrative appeal.  The Court will allow the parties to complete the

administrative record using any material that Forest Service considered in forming or reconsidering its 2010 Decision Notice. . . .

The Court cannot discern -- at least not in every instance -- the identity of the documents it is allowing into the record by making these decisions.  Most of the ambiguity arises from the second issue, the completeness of the administrative record that the Forest Service compiled.  The Forest Service appears to represent that it has excluded from the administrative record some materials that it used to formulate the 2010 Decision Notice, but it is not clear what documents those are. If the Forest Service or its employees considered a document in formulating the 2010 Decision Notice, then the Plaintiffs are entitled to use that evidence at the judicial-review stage.  The Court will not, however, remand the case, or require the Forest Service to re-compile a new administrative record.  Rather, the Court will permit the Plaintiffs to designate documents that they believe in good faith that Trujillo or her supervisors considered in making the decisions now being appealed before the Court.  If the Defendants then represent to the Court that they did not consider a given piece of designated evidence in formulating the 2010 Decision Notice, then the Court will exclude the evidence from the record. Otherwise, the Court will require the Defendants to add the designated material to the administrative record. . . .

. . . .

The Defendants appear to argue -- and appear to have acted on the presumption that their argument is correct -- that they may exclude from the administrative record any evidence that . . . Trujillo considered in her original decisionmaking, but that Clark and John Pierson did not consider in adjudicating the administrative appeal.  If that is what the Defendants are arguing, then they must acquiesce to any requests by the Plaintiffs to add materials to the administrative record, provided that Trujillo or another Forest Service official considered the materials in formulating the 2010 Decision Notice.

The Defendants' apparent argument is predicated on the Forest Service regulations that set forth the issue-exhaustion requirement: "[I]t is 'the appellant's responsibility' to produce 'specific evidence and rationale' to show how the appealed decision 'specifically violates law.'"  Response at 10 (quoting 36 C.F.R. § 215.14(a), (b)(8)).  This argument is unavailing.  Issue exhaustion is separate from the administrative-record rule, and an obligation to raise all claims and legal theories with the lower tribunal to preserve them for the higher tribunal does not imply a requirement to resubmit the same evidence at each successive level. Claims and arguments can be abandoned at the administrative-appeal level; evidence cannot be.  Such an approach would be analogous to the Supreme Court refusing to consider transcripts of witness testimony taken at the district court, because the witnesses were not called to re-testify at the Court of Appeals. . . .

. . . .

It is possible that the Court is misapprehending the Defendants' argument, and that what they are arguing is that issue-exhaustion -- which the Court has already ruled bars the Plaintiffs from proceeding on their substantive First Amendment retaliation claim -- precludes the Plaintiffs from raising bad faith for the purpose of going outside the administrative record.  If that is what the Defendants are arguing, then the Court breathes a sigh of relief, as it means that the Court will not have to spend additional time on this case adjudicating disputes about what materials Trujillo did or did not consider in promulgating the 2010 Decision Notice.  The Court would still, however, reject this argument.  Issue exhaustion prevents the Plaintiffs from pursuing a substantive claim, and seeking legal or equitable relief, for the Defendants' retaliatory animus, but it does not bar them from attempting to supplement the record on bad-faith grounds.  None of the Ninth Circuit cases that discuss the bad-faith exception to the administrative-record rule mention a requirement to exhaust or preserve the bad-faith argument at the agency level, see City of Las Vegas, Nev. v. FAA, 570 F.3d 1109, 1116 (9th Cir. 2009); Sw. Ctr. for Biological Diversity v. U.S. Forest Serv., 100 F.3d at 1450; Animal Def. Council v. Hodel, 840 F.2d 1432, 1438 (9th Cir. 1988); Pub. Power Council v. Johnson, 674 F.2d 791, 795 (9th Cir. 1982), nor does the Tenth Circuit, see Citizens for Alternatives to Radioactive Dumping v. U.S. Dep't of Energy, 485 F.3d at 1096, or the Supreme Court, see Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. at 420.

Moreover, there is no reason for an exhaustion requirement to apply to a procedural record-supplementation rule.  First, if exhaustion applies to this exception, then one might also expect it to apply to the other exceptions, which are: (i) to determine "whether the agency has considered all relevant factors and has explained its decision"; (ii) if the Plaintiffs can show that "the agency has relied on documents not in the record"; and (iii) if "supplementing the record is necessary to explain technical terms or complex subject matter."  Sw. Ctr. for Biological Diversity v. U.S. Forest Serv., 100 F.3d at 1450.  Applying an exhaustion requirement to any of these other exceptions would be nonsensical.  Second, the relief that the appellant stands to gain from sandbagging the agency is much less significant -- supplementation of the record versus winning a substantive claim -- and can be tailored to fit the circumstances.  If the alleged bad faith might have been easily rectified or excised from the decisionmaking process if the agency had been properly warned -- e.g., if a single, replaceable member of an administrative panel is the only individual alleged to hold an animus -- then the Court can remedy the bad-faith finding with remand, rather than supplementation or discovery.  On the other hand, rigidly applying an exhaustion requirement to bad-faith contentions causes the appellant to forfeit not only any claim arising from the bad faith itself -- i.e., any First Amendment retaliation claim -- but also, potentially, on all claims, if the administrative record is deficient enough to make a difference in the outcome.  The Court sees no reason to enforce such a harsh procedural-default rule.

. . . .

The Court will, therefore, allow the Plaintiffs to complete the administrative record with materials that Trujillo considered in formulating the 2010 Decision Notice . . . .

AMO at 58-59; id. at 70-71 (citations omitted); id. at 72-73; id. at 75.

The Defendants' Motion to Reconsider asks the Court to "reconsider its conclusion on the second issue, that . . . the Forest Service has compiled an incomplete administrative record for the Court, which would require the Forest Service to add the omitted materials even absent a showing of bad faith.'" Defendants' Motion to Reconsider at 1 (omission in original). They contend that, "[c]ontrary to this finding, the Administrative Record includes the materials that the Forest Service considered during the entire decision-making process for the 2010 Decision Notice without regard to whether they were also considered during the subsequent review of the Administrative Appeals." Defendants' Motion to Reconsider at 1. They state that they "did not assert (or intend to assert) that any materials that were presented to or otherwise considered by the Forest Service during any phase of the decision-making process were not included in the Administrative Record lodged with the Court." Defendants' Motion to Reconsider at 3. They state that reconsideration is necessary, because they

> are prejudiced by the Court's remedial procedure, which usurps the well-established presumption the agency is entitled to in designating the Administrative Record, and therefore the remedial procedure should be vacated. Plaintiffs were required to demonstrate in their Motion to Supplement through "clear evidence" that Federal Defendants improperly designated the Administrative Record. Having failed to meet that burden, the presumption that the Administrative Record was properly designated must remain in place.

Defendants' Motion to Reconsider at 6. The Defendants attach an affidavit from the Forest Service officer who assembled the administrative record in this case, attesting to the fact that all materials considered at the initial decisionmaking are included in the administrative record. See

Supplemental Certification of Administrative Record (taken Feb. 12, 2015), filed February 21, 2015 (Doc. 147-1).

### LAW REGARDING MOTIONS TO RECONSIDER AND THE APPLICATION OF LAW-OF-THE-CASE DOCTRINE TO INTERLOCUTORY ORDERS AT THE DISTRICT COURT LEVEL

Considerable confusion exists among the bar regarding the proper standard for a district court to apply when ruling on a motion to reconsider one of its prior "interlocutory" or "interim" orders, i.e., an order that a district court issues while the case is ongoing, as distinguished from a final judgment. This confusion originates from the fact that the Federal Rules of Civil Procedure -- the normal starting point for figuring out how to use various procedural devices in the federal courts -- do not mention motions to reconsider, let alone set forth a specific procedure for filing them or a standard for analyzing them. A loose conflation in terminology in Servants of the Paraclete v. Does, which refers to rule 59(e) motions -- "motion[s] to alter or amend a judgment" -- as "motions to reconsider,"[1] compounded that baseline confusion. Fed. R. Civ. P. 59(e) (emphasis added); Servants of the Paraclete v. Does, 204 F.3d 1005 passim.

---

[1]The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, who authored Servants of the Paraclete v. Does, refers to rule 59(e) motions as "motions to reconsider" several times throughout the opinion. He uses the term "motion to reconsider" as an umbrella term that can encompass three distinct motions: (i) motions to reconsider an interlocutory order, which no set standard governs, save that the district court must decide them "before the entry of . . . judgment," Fed. R. Civ. P. 54(b); (ii) motions to reconsider a judgment made within 28 days of the entry of judgment, which the Servants of the Paraclete v. Does standard governs; and (iii) motions to reconsider a judgment made more than 28 days after the entry of judgment, which rule 60(b) governs. There is arguably a fourth standard for motions to reconsider filed more than a year after the entry of judgment, as three of the rule 60(b) grounds for relief expire at that point.

Much confusion could be avoided by using the term "motion to reconsider" exclusively to refer to the first category, "motion to amend or alter the judgment" exclusively to refer to the second category, and "motion for relief from judgment" exclusively to refer to the third category (and arguable fourth category). These are the terms that the Federal Rules of Civil Procedure -- and other Circuits -- use to describe (ii) and (iii). The Court agrees with Judge Kelly -- and all he likely meant by using motion to reconsider as an umbrella term is -- that, if a party submits a

Final judgments are different from interlocutory orders.   See Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies." (emphasis added)).   In addition to ripening the case for appeal, see 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts . . . ."), the entry of final judgment narrows the district court's formerly plenary jurisdiction over the case to: (i) for the first twenty-eight days after the entry of judgment, motions under rules 50(b), 52(b), 59, and 60 -- the district court's jurisdiction, while limited, trumps that of the Court of Appeals during this time period, and, even if a party files a notice of appeal, the Court of Appeals will wait until after the district court has ruled on the post-judgment motion to touch the case, see Fed. R. App. P. 4(a)(4)(B); (ii) after twenty-eight days, if a party has filed a notice of appeal, motions under rule 60 -- the Court of Appeals' jurisdiction trumps the district court's during this period, and the district court needs the Court of Appeals' permission even to grant a rule 60 motion;[2] and (iii) after twenty-eight days, if no party has filed a notice of appeal, motions under rule 60.

---

motion captioned as a "motion to reconsider" after an entry of final judgment, the court should evaluate it under rule 59(e) or 60(b), as appropriate, rather than rejecting it as untimely or inappropriate.

[2]Rule 60(a), which allows the district court to correct clerical errors, provides that, "after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave."   Fed. R. Civ. P. 60(a).   Rule 60(b), which provides for the correction of substantive legal errors, has an interestingly one-sided application when the case is up on appeal: "[A] notice of appeal does not divest a district court of jurisdiction to consider a Rule 60(b) motion, although it prevents a district court from granting such a motion unless it notifies this court of its intention to grant the motion upon proper remand."   West v. Ortiz, No. CIV 06-1192, 2007 WL 706924, at *5 n.5 (10th Cir. Mar. 9, 2007)(unpublished)(Broby, J.)(citing Allison v. Bank One-Denver, 289 F.3d 1223, 1243 (10th Cir. 2002); Aldrich Enters., Inc. v. United States, 938 F.2d 1134, 1143 (10th Cir. 1991)).   In other words, "a district court does have the authority 'to consider on the merits and deny a 60(b) motion after a notice of appeal, because the district court's action is in furtherance of the appeal,'" but the district court does not have the authority to grant a rule 60(b) motion without

Final judgments implicate two important concerns militating against giving district courts free reign to reconsider their judgments. First, when a case is not appealed, there is an interest in finality. The parties and the lawyers expect to go home,[3] quit obsessing about the dispute, and

---

first asking the Court of Appeals to remand the case. United States v. Edmonson, 928 F. Supp. 1052, 1053 (D. Kan. 1996)(Crow, J.)(emphasis in original)(quoting Winchester v. U.S. Att'y for the S. Dist. of Tex., 68 F.3d 947, 949 (5th Cir. 1995)).

[3]When the Court says that the parties are free to "go home" after the final judgment, it is not just employing colorful language. At the beginning of a case, the plaintiff is required to serve a summons on the defendant, personally, or obtain a waiver of such service. See Fed. R. Civ. P. 4(c)-(d). Service of process is a jurisdictional prerequisite, without which the defendant is under no obligation to participate in the case, and without which the plaintiff cannot seek a default judgment. See Fed. R. Civ. P. 4, 55. Once served with process, however, the bar for continued service lowers substantially; papers may be served on the opposing party's attorney, rather than on the opposing party, personally, and service via CM/ECF suffices. See Macias v. N.M. Dep't of Labor, 300 F.R.D. 529, 571 (D.N.M. 2014)(Browning, J.)("While rule 5's relatively permissive standards govern service of a motion, rule 4's more rigorous provisions govern service of a summons and complaint initiating a case." (emphasis in original)).

The disparity between the one-time, heightened obligations of rule 4 service and the ongoing, easy-to-follow obligations of rule 5 service makes sense. It would be unfair for a plaintiff to win a default judgment against a defendant who has no idea he or she is being sued. On the other hand, once the defendant has been put on notice of the case, judicial efficiency dictates that the defendant should have an affirmative obligation to stay abreast of anything that pops up on CM/ECF.

That obligation, however, must end with the case. If it did not, then anyone ever named as a party in a judicial proceeding would have to spend the rest of his or her life looking out for new motions in the long-closed case, keeping his or her former adversaries updated with current contact information, and periodically checking the old docket sheet or calling the clerk's office to verify that nothing new has happened. The Court had such a case in 2014. In Macias v. New Mexico Department of Labor, a group of Spanish-speaking farmworkers in the El Paso, Texas, and Sunland Park, New Mexico, area had banded together and sued the New Mexico Department of Labor ("NMDOL") in 1991. 300 F.R.D. at 533-34. The case had settled in 1992, with the NMDOL agreeing, as a part of the settlement agreement, to keep a claim office open in Sunland Park indefinitely. See 300 F.R.D. at 534. In 2013, however, the NMDOL -- now named the New Mexico Department of Workforce Solutions -- filed a motion to reopen the case and exercise an escape clause in the settlement agreement purporting to allow it "'to motion the Court for appropriate relief'" in the event of "'a reduction in funding to NMDOL.'" 300 F.R.D. at 534 (quoting the settlement agreement). The NMDOL was unable to locate the plaintiffs and instead served its motion on the attorney, Nancy Simmons, who had represented the plaintiff-farmworkers in 1991 and 1992 in connection with her employment with Texas Rural Legal Aid, Inc. See 300 F.R.D. at 534-37. Ms. Simmons had moved through several different public-interest legal jobs since 1992, and she had not had contact with the plaintiffs -- whom she

put the case behind them, and the final judgment -- especially once the twenty-eight day window of robust district court review and the thirty-day window of appeal have both closed -- is the disposition upon which they are entitled to rely.  Second, when a case is appealed, there is the need for a clean jurisdictional handoff from the district court to the Court of Appeals.  "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously," as doing so produces a "danger [that] a district court and a court of appeals w[ill] be simultaneously analyzing the same judgment."  Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58-59 (1982).  The Court of Appeals needs a fixed record on which to base its decisions -- especially given the collaborative nature of appellate decisionmaking -- and working with a fixed record requires getting some elbow room from the district court's continued

---

represented to be itinerant -- in over a decade.  See 300 F.R.D. at 534-37.  Ms. Simmons argued that she was no longer the plaintiffs' lawyer and that service on her was inappropriate, but she nonetheless entered "'a special entry of appearance exclusively for the purpose of challenging subject-matter jurisdiction and personal jurisdiction.'"  300 F.R.D. at 536 (citation omitted).  On the personal jurisdiction issue, Ms. Simmons argued that the NMDOL's motion was really a new suit, which required new service of process on the farmworkers; in the alternative, she argued that, even if the motion was properly styled as a motion in the 1991 case, she was no longer a proper recipient of even non-process service under rule 5.  See 300 F.R.D. at 536-37.  She argued that, even if it were fair -- in the context of more recent cases -- to continue to hold parties accountable for everything posted on CM/ECF, even years after final judgment, CM/ECF had not existed in the 1990s, and the plaintiffs, thus, most likely neither knew about the suit nor had any reasonable way of learning about it.  The Court ultimately denied the NMDOL's motion for lack of subject-matter jurisdiction and did not decide whether sending an electronic mail transmission to Ms. Simmons constituted sufficient service on the plaintiffs.  See 300 F.R.D. at 571 ("The Court will reserve judgment whether it has personal jurisdiction over UTAF."  (emphasis omitted)).

Although the Court did not decide the question because it lacked subject-matter jurisdiction, it would be patently unfair to allow former parties to ancient cases to come back, years after the cases' resolution, and effectively receive ex parte reconsideration of rulings that the opposing parties and the Court put behind them long ago.  From the parties' perspective, the initial service of summons and final judgment are the jurisdictional bookends signifying the beginning and end of their responsibility to be diligently engaged in the case.  The same due-process considerations that give rise to the service-of-process requirement also demand that the case eventually end and that the parties eventually be set free from their obligations to stay on top of it.

interference with the case.  The "touchstone document" for this jurisdictional handoff is the notice of appeal, not the final judgment, see Griggs v. Provident Consumer Discount Co., 459 U.S. at 58 ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  (citations omitted)); Garcia v. Burlington N. R.R. Co., 818 F.2d 713, 721 (10th Cir. 1987)("Filing a timely notice of appeal pursuant to Fed. R. App. P. 3 transfers the matter from the district court to the court of appeals.  The district court is thus divested of jurisdiction.  Any subsequent action by it is null and void."  (citations omitted)); Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166, 1170 (5th Cir. 1978)("[I]t is the filing of the appeal, not the entering of a final judgment, that divests the district court of jurisdiction." (citations omitted)), but, because the final judgment starts the parties' thirty-day clock for filing a timely notice of appeal, the Federal Rules and the Tenth Circuit have chosen to curtail the district court's jurisdiction over the case in the roughly month-long period of potentially overlapping trial- and appellate-court jurisdiction that immediately follows the entry of final judgment, see Servants of the Paraclete v. Does, 204 F.3d at 1009 (noting that post-final judgment motions at the district court level are "not intended to be a substitute for direct appeal").  Basically, rather than suddenly divesting the district court of all jurisdiction over the case at final judgment -- potentially resulting in the district court being unable to rectify easily fixable problems with the final judgment before the case goes to the Tenth Circuit, or even requiring appeal of a case that might otherwise not need to be appealed -- the Federal Rules set forth a jurisdictional phased de-escalation process, wherein the district court goes from pre-final judgment plenary jurisdiction, to limited review for the first twenty-eight days post-final judgment, and, finally, to solely rule 60 review after twenty-eight days.  In defining the "limited review" that rule 59(e) allows a

district court to conduct in the 28-day flux period, the Tenth Circuit, in <u>Servants of the Paraclete v. Does</u>, incorporated traditional law-of-the-case grounds -- the same grounds that inform whether a court should depart from an appellate court's prior decision in the same case -- into rule 59(e).  <u>See</u> <u>United States v. Alvarez</u>, 142 F.3d 1243, 1247 (10th Cir. 1998)("[W]e will depart from the law of the case doctrine in three exceptionally narrow circumstances: (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice."  (citation omitted)); <u>Servants of the Paraclete v. Does</u>, 204 F.3d at 1012 (incorporating those grounds into rule 59(e)).

Neither of these concerns -- finality or jurisdictional overlap -- is implicated when a district court reconsiders one of its own interlocutory orders.  The Federal Rules do not specifically mention motions to reconsider interlocutory orders, but rule 54(b) makes the following open-ended proclamation about the mutability of interlocutory orders:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.   Otherwise, <u>any order or other decision</u>, however designated, <u>that adjudicates fewer than all the claims</u> or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and <u>may be revised at any time before the entry of a judgment</u> adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphases added).  Rule 54(b) thus (i) provides that a district court can freely reconsider its prior rulings; and (ii) puts no limit or governing standard on the district court's ability to do so, other than that it must do so "before the entry of judgment."  Fed. R. Civ. P. 54(b).

The Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., 495 F.3d at 1225. In the Tenth Circuit, "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another." Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1252 (10th Cir. 2011)(emphasis added)(citing Been v. O.K. Indus., Inc., 495 F.3d at 1225). In this context, "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" Been v. O.K. Indus., Inc., 495 F.3d at 1225 (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)). In short, a district court can use whatever standard it wants to review a motion to reconsider an interlocutory order. It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.

In Anderson Living Trust v. WPX Energy Production, LLC, No. CIV 12-0040 JB/KBM, 2015 WL 4040616 (D.N.M. June 24, 2015)(Browning, J.), the Court concluded that motions to reconsider should not all be analyzed under a uniform standard, but, rather, should be analyzed with more or less rigor depending upon the circumstances:

> The best approach, in the Court's eyes, is to analyze motions to reconsider differently depending on three factors. Cf. Been v. O.K. Indus., Inc., 495 F.3d at 1225 ("[T]he doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" (citation omitted)). First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges. How "thoroughly" a point was addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy the parties spent on it -- in briefing and orally arguing the issue, but especially if they developed evidence on the issue. A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling was on a criminal suppression

motion, class certification motion, or preliminary injunction,[4] than when the prior ruling is, e.g., a short discovery ruling.  The Court should also look, not to the overall thoroughness of the prior ruling, but to the thoroughness with which the Court addressed the exact point or points that the motion to reconsider challenges.  A movant for reconsideration thus faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.

Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the parties may produce, and use those factors to assess the degree of reasonable reliance the opposing party has placed in the Court's prior ruling.  See 18B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman & Catherine T. Struve, Federal Practice & Procedure § 4478.1 (2d ed.)("Stability becomes increasingly important as the proceeding nears final disposition . . . . Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling.").  For example, if a defendant (i) spends tens of thousands of dollars removing legacy computer hardware from long-term storage; then (ii) obtains a protective order in which the Court decides that the defendant need not produce the hardware in discovery; then (iii) returns the hardware to long-term storage, sustaining thousands more in expenses;  and (iv) several months pass, then the plaintiffs should face a higher burden in moving the Court to reconsider its prior ruling that they faced in fighting the motion for protective order the first time.

---

[4]The Court typically makes findings of fact and conclusions of law in ruling on these motions.  At first glance, it appears that the Federal Rules of Civil Procedure set forth additional standards -- beyond that which applies to other interlocutory orders -- for amending findings of fact and conclusions of law: **Amended or Additional Findings.  On** a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings -- or make additional findings -- and may amend the judgment accordingly.  The motion may accompany a motion for a new trial under Rule 59."  Fed. R. Civ. P. 52(b).  This rule appears to limit motions to reconsider orders with findings of fact and conclusions of law to twenty-eight days.  The rule's use of the term "entry of judgment," its reference to rule 59, and its adoption of the same time period that applies to motions to alter or amend a judgment, all lead the Court to conclude, however, that rule 52(b) -- and its 28-day time limit -- does not apply to interlocutory orders.  The time limit applies only to findings of fact and conclusions of law supporting a case-ending judgment -- such as those entered after a bench trial -- and to those giving rise to an interlocutory appeal that, if filed, divests the district court of its jurisdiction.

Third, the Court should consider the <u>Servants of the Paraclete v. Does</u> grounds. The Court should be more inclined to grant motions for reconsideration if the movant presents (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii) new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred.

<u>Anderson Living Trust v. WPX Energy Prod., LLC</u>, 2015 WL 4040616, at *21-22.

These three factors should influence the degree to which the Court restricts its review of a prior ruling, but they do not necessarily mean that the Court should always apply a deferential standard of review, <u>i.e.</u>, a less-than-de novo standard. The Court should pause before applying a standard of review to its own interlocutory orders that is more deferential than the standard that the Court of Appeals will apply to it, unless the Court concludes that the alleged error in the prior ruling was harmless, or the party moving for reconsideration waived their right to appeal the alleged error by not raising the appropriate argument. Even in circumstances where the Court concludes that it is insulated from reversal on appeal, there are principled reasons for applying a de novo standard. After all, if the Court was wrong in its earlier decision, then, generally speaking, it is unjust to maintain that result -- although the Court should weigh this injustice against any injustice that would result from upending the parties' reliance on the earlier ruling, which is the balancing test that the three factors above represent.

What the Court means by "restricting its review" is less about applying a deferential standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration. The Court should consider the time and expense that the party opposing reconsideration spent in winning the earlier ruling, and should try to prevent

that party from having to bear the same impositions again.  Basically, even if the Court ultimately analyzes a motion to reconsider under the same standard that it analyzed the motion that produced the earlier ruling, it should analyze the motion in a different way -- one focused on reducing the litigation burdens of the party opposing reconsideration.  For example, when a party moves the Court for a preliminary injunction, standard practice is that the Court holds an evidentiary hearing as a matter of course, regardless whether it looks as if the party has a good chance of prevailing.  If the party loses and the Court denies the injunction, however, and the party moves for reconsideration, the party should not be entitled to the presumption of an evidentiary hearing merely because he or she received that presumption the first time the Court considered the motion.

In light of these statements, it is perhaps better to characterize the increased burden that a movant for reconsideration faces as one of production and not of persuasion.  The Court analyzes motions to reconsider by picking up where it left off in the prior ruling -- not by starting anew. Parties opposing reconsideration can do the same, and they may stand on whatever evidence and argument they used to win the earlier ruling.  Movants for reconsideration, on the other hand, carry the full burden of production: they must persuade the Court, using the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they must convincingly refute both the counterarguments and evidence that the opposing party used to win the prior ruling, and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider.  Unlike the motion that produced the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally.  The deck is stacked against a movant for reconsideration, and if such a movant hopes to prevail, he or she must have

not only a winning legal position, but the work ethic and tenacity to single-handedly lead the Court to his or her way of thinking.

**ANALYSIS**

The Court will grant the Plaintiffs' Motion to Reconsider and deny the Defendants' Motion to Reconsider.  The Plaintiffs have pointed out a legitimate error in the AMO.  The Defendants, on the other hand, merely seek to cover up one of the alternative decisions in the MOO -- alternative decisions that the Defendants' ambiguous briefing necessitated.

**I.    THE COURT WILL GRANT THE PLAINTIFFS' MOTION TO RECONSIDER, BECAUSE CHAVEZ ADMINISTRATIVELY APPEALED HIS ADVERSE DECISION FROM TRUJILLO.**

Chavez' Letter suffices as an administrative appeal, and the Court's statement in the AMO, that none of the individual Plaintiffs filed an appeal at all, is incorrect.  The parties' briefing on the Exhaustion MTD focused almost exclusively on the grazing associations' Notice of Appeal, which is a fifteen-page document, which a lawyer prepared, and which makes detailed legal arguments broken down by headings.  See Notice of Appeal at 1-15.  In short, the grazing associations' Notice of Appeal resembles a legal brief.

Chavez' Letter, on the other hand, is just over a page long, is signed by Chavez himself, and, basically, does not look like a formal appellate document.  See Chavez' Letter at 1-2.  The Court does not see many internal Forest Service appellate documents, and it had assumed that Chavez' Letter was an informal notification of Chavez' intent to file a future appeal -- which he never did.  Looking again at Chavez' Letter, however, statements that the Court initially read to support its first interpretation of the document now seem to support the Plaintiffs' contention that Chavez' Letter is itself an appeal.  Chavez' Letter begins:

> This letter is in response to your letter dated October 12, 2010 to all permit holders regarding your decision for reduction in permits in the Jarita Mesa and the

- 22 -

> Alamosa Gazing Allotments.  First I would like to make it clear that I am not in
> support of your decision and in accordance with 36 CFR 215 <u>I am appealing your</u>
> <u>ruling</u>.

Chavez' Letter at 1 (emphasis added).  Although the Court read the line "I am appealing your

ruling" as referring to pending activity which would culminate in a final product -- an appeal --

that language suffices to render Chavez' Letter an appeal in itself.  Chavez' Letter at 1.  Chavez

closes with: "Thank you for your time and consideration in this very important matter.  I can be

reached for any questions in regards <u>to this appeal</u> by calling me at 575-582-4280 or in writing at

PO Box 225, Vallecitos, New Mexico 87581."  Chavez' Letter at 2 (emphasis added).  Again,

when the Court was in the mindset that Chavez' Letter was a preliminary notice -- a mindset it

developed both because of the parties' lack of attention to Chavez' appeal relative to the grazing

associations' more robust Notice of Appeal, and because of the informal nature of Chavez' Letter

-- it was easy for the Court to read this language as referring to an ongoing activity, rather than as

a parting notice about where and how Trujillo could reach the appellant for additional argument

or information.  After reexamining Chavez' Letter, the Court concludes that it complies with all

the requirements in 36 C.F.R. §§ 214.8-214.9, which do not require any specific form.

Still, Chavez' Letter does not exhaust the First Amendment issue.  Like the grazing

associations' Notice of Appeal, Chavez' Letter "does not contain . . . any reference to

'retaliation,' the 'First Amendment,' 'speech,' the 'Constitution' or anything 'constitutional,'

'animus,' or anything 'protected.'"  AMO at 102.  <u>See</u> Chavez' Letter at 1-2.  Chavez' First

Amendment retaliation claim must thus be dismissed for the same reason that the grazing

associations' claims were dismissed -- but not for the same reason that the other individual

Plaintiffs' claims were dismissed.

The Court will not refile an edited version of the AMO, as it believes that this Memorandum Opinion and Order will suffice for any of the potential uses for which the Plaintiffs filed the Plaintiffs' Motion to Reconsider.  The Court will, however, grant the motion.

## II. THE COURT WILL GRANT THE DEFENDANTS' MOTION TO RECONSIDER, BUT IT WILL NOT ALTER THE MOO, BECAUSE THERE IS NOTHING ERRONEOUS IN IT.

The Court will reconsider its MOO, but, after doing so, it will not change anything in it, because there is nothing wrong with it.  The MOO designed the following remedial procedure as a shortcut for remanding the case -- which the Court concluded would take too long and be too harsh to the Plaintiffs, who have done nothing wrong:

> The Forest Service appears to represent that it has excluded from the administrative record some materials that it used to formulate the 2010 Decision Notice, but it is not clear what documents those are.  If the Forest Service or its employees considered a document in formulating the 2010 Decision Notice, then the Plaintiffs are entitled to use that evidence at the judicial-review stage.  The Court will not, however, remand the case, or require the Forest Service to re-compile a new administrative record.  Rather, the Court will permit the Plaintiffs to designate documents that they believe in good faith that Trujillo or her supervisors considered in making the decisions now being appealed before the Court.  If the Defendants then represent to the Court that they did not consider a given piece of designated evidence in formulating the 2010 Decision Notice, then the Court will exclude the evidence from the record.  Otherwise, the Court will require the Defendants to add the designated material to the administrative record.

MOO at 59.  The Court concludes that the MOO was clear that this procedure would go into effect only if the Forest Service had in fact categorically excluded materials considered at the initial decisionmaking stage but not at the subsequent internal appellate stage.

The Defendants appear to argue -- and appear to have acted on the presumption that their argument is correct -- that they may exclude from the administrative record any evidence that the Trujillo considered in her original decisionmaking, but that Clark and John Pierson did not consider in adjudicating the administrative appeal.  See Response at 6 ("Plaintiffs are barred from pursuing any claim based on . . . materials they failed to present in their administrative appeal." (emphasis omitted)(capitalization altered for readability)); id. at 9-10 ("Plaintiffs' failure to present the evidence in their Administrative Appeal that

they now seek to have the Court rely on thwarts all of these objectives."); id. at 10 ("The Forest Service's Administrative Appeal regulations expressly required Plaintiffs to produce such evidence with their Administrative Appeal." (citing 36 C.F.R. § 215.14(a), (b)(8))); id. at 11 ("Plaintiffs' Administrative Appeal failed to raise claims, issues, arguments, and evidence on which Plaintiffs now seek to base their appeal before this Court." (emphasis added)); id. at 24 ("[N]either of these affidavits is properly before the Court because the Plaintiffs failed to produce them with their Administrative Appeal."); id. at 32 ("Plaintiffs [are] barred from submitting these affidavits for the first time in Court instead of with Plaintiffs" Administrative Appeal . . . ."). If that is what the Defendants are arguing, then they must acquiesce to any requests by the Plaintiffs to add materials to the administrative record, provided that Trujillo or another Forest Service official considered the materials in formulating the 2010 Decision Notice.

MOO at 70-71 (emphasis added). If it was not clear, then the Court will make it clear now: having now clearly represented to the Court that the administrative record they compiled contains all materials considered at either stage of their decisionmaking process, the Defendants need not supplement the record, nor must they cooperate with any requests from the Plaintiffs to supplement the record.

The natural reading of the Defendants' briefing -- particularly the statements that the Court quoted in the block-quoted portion of the MOO -- is that they included only materials that they considered at both internal stages, rather than including material considered at either stage. The only thing that caused the Court to doubt this natural reading is the commonsense observation that it would be strange for the Forest Service to not know how to compile a proper administrative record, particularly in light of Tenth Circuit case law telling them exactly how to do it. See Bar MK Raches v. Yuetter, 994 F.2d at 739. The Court, however, has seen stranger things. Particularly if the Defendants' counsel are generalists out of the local United States Attorney's Office, rather than administrative-law specialists from Washington, D.C., the Court could see them being unaccustomed to putting together an administrative record.

The Defendants already have all of the relief they seek from the Defendants' Motion to Reconsider, without the Court having to change the MOO.  They have properly compiled the administrative record, and thus the remedial procedure that the Court outlined, which was contingent on the Defendants' representations to the Court actually being what they appeared to be, will not go into effect.  The Court will not require the Defendants to supplement the administrative record, nor will the Court allow the Plaintiffs to supplement it.  The Court will grant the Defendants' Motion to Reconsider; it will reconsider the statements in the MOO, but, finding nothing incorrect about them, will leave them intact.

**IT IS ORDERED** that: (i) the Plaintiffs['] Motion to Amend or Correct the Amended Memorandum Opinion of November 18, 2014, Granting Defendants' Motion to Dismiss Plaintiffs['] First Amendment Claim for Failure to Exhaust Remedies, filed November 26, 2014 (Doc. 136), is granted; and (ii) the Federal Defendants' Motion to Amend the Court's February 9, 2015 Memorandum Opinion and Order, ECF No. 143, filed February 21, 2015 (Doc. 147), is granted in part and denied in part.  The Court officially corrects its Amended Memorandum Opinion, filed November 18, 2014 (Doc. 135), and notes that Plaintiff Steve Chavez filed a proper administrative appeal, although the appeal does not raise a retaliation claim under the First Amendment to the Constitution of the United States of America.  The Court's Memorandum Opinion and Order, filed February 9, 2015 (Doc. 143), will remain unaltered.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Simeon Herskovits
Iris A. Thornton
Michelle T. Miano
Advocates for Community and Environment
El Prado, New Mexico

--and--

Richard Rosenstock
Santa Fe, New Mexico

      *Attorneys for the Plaintiffs*

Damon P. Martinez
  United States Attorney
Ruth Fuess Keegan
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

--and--

John C. Cruden
  Assistant Attorney General
Andrew A. Smith
  Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Albuquerque, New Mexico

      *Attorneys for the Defendants*